[No. 31323-1-I.    Division One.    July 26, 1993.]

SAS AMERICA, INC., *Appellant,* v. ERNEST Y. INADA,
ET AL, *Respondents.*

*Karien L. Balluff,* for appellant.

*Michael R. McKinstry* and *Ellis, Li & McKinstry,* for respondents.

SCHOLFIELD, J. — SAS America, Inc. (SAS) appeals a summary judgment in favor of Molly and Ernest Inada, contending Mr. Inada's personal guaranties on money SAS loaned to Pribilof Island Processors, Inc. (PIP) were not superseded by a subsequent agreement in which Mr. Inada did not personally guarantee the loans. We reverse.

From 1988 to 1990, SAS loaned money to PIP. During this time, the president of SAS, Mr. Satoshi Sasaki, a Japanese man with a limited understanding of English, was also a director and officer of PIP. In the fall of 1989, Mr. Sasaki asked Mr. Inada to personally guarantee loans SAS had already made in exchange for SAS's continuing to advance funds to PIP. Mr. Inada agreed and executed two promissory notes, one dated October 2, 1989, and the other dated October 3, 1989, on behalf of PIP, and two personal guaranties amounting to $1,380,000. The personal guaranties guaranteed payment of the two October 1989 promissory notes, and incorporated the terms of the promissory notes by reference.

In 1990, Mr. Sasaki relinquished his position in PIP. Before doing so, he asked that PIP's obligations be properly documented and requested that Mr. Young (Mr. Sasaki's attorney who had also represented PIP) draw up promissory notes representing over $1,700,000 of debt. The notes and another document entitled "Loan and Security Agreement" (security agreement), which is central to the present dispute, made no reference to Mr. Inada's personal guaranties. SAS and PIP were parties to the security agreement, but not Mr. Inada. The security agreement's integration clause stated:

This Agreement sets forth the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes and replaces all prior written agreements and negotiations and all understandings, if any, with respect thereto.

PIP defaulted on the notes and the security agreement and entered bankruptcy. SAS sued the Inadas on the personal guaranties. The Inadas moved for summary judgment and requested attorney fees. After granting summary judgment to the defendants, the Superior Court calculated attorney fees of $15,375.

SAS appeals the summary judgment, contending there are a number of genuine issues of material fact, including what the parties' intent was when the security agreement was signed and whether Mr. Inada's personal guaranties were canceled even though in his individual capacity he was not a party to the security agreement. The Inadas counter that Mr. Sasaki's subjective intent has no legal impact on the security agreement, the agreement is internally consistent and manifests the parties' intent, and the agreement expressly discharged the October 1989 notes and Mr. Inada's personal guaranties.

In determining whether summary judgment has been properly granted, the reviewing court must draw all reasonable inferences in the light most favorable to the non-moving party. *Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991). An appellate court resolving a motion for summary judgment must consider all facts submitted, engaging in the same inquiry as the trial court. *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 120 Wn.2d 573, 579-80, 844 P.2d 428 (1993). The moving party bears the burden of showing the absence of an issue of material fact. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 395, 823 P.2d 499 (1992). In the present case, the Inadas have the burden of showing there is no material fact at issue as to whether Mr. Inada's loan guaranties were nullified by the subsequent agreement.

The touchstone of contract interpretation is determining the intent of the parties. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). *Berg* held that extrinsic evidence is admissible "as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." *Berg*, at 667. In the case at hand, the intent of the parties (SAS and PIP) is unclear and must be the beginning point for interpretation of the parties' security agreement. *See Scott*, at 580.

> In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, . . . and the reasonableness of respective interpretations advocated by the parties."

*Scott*, at 580 (quoting *Berg*, at 667).

This "context" rule is limited, however, to admitting evidence which elucidates

> the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument.

*Berg*, at 669 (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)).

In *Olympia Police Guild v. Olympia*, 60 Wn. App. 556, 805 P.2d 245 (1991), the court applied the *Berg* context rule to a collective bargaining agreement. The court defined the type of evidence that could be admitted under the context rule:

> [T]he intent of the parties to be divined by application of the context rule has to do with their real meeting of the minds, as opposed to the insufficient written expression of their intent. Unilateral and subjective beliefs about the impact of a written contract do not represent the intent of the parties.

*Police Guild*, at 559. The court in that case ruled that the respondents did not show a meeting of the minds inconsistent with the plain words of the agreement, and therefore summary judgment was proper. *See also Minter v. Pierce Transit*, 68 Wn. App. 528, 535, 843 P.2d 1128 ("unilateral"

view of intent does not evidence a meeting of the minds), *review denied*, 121 Wn.2d 1023 (1993).

In the present case, the intention of the parties to the security agreement as to Mr. Inada's personal guaranties is not clear. The parties to the security agreement were PIP and SAS, not Mr. Inada in his individual capacity as a guarantor.[1] The agreement's integration clause concerned "the subject matter hereof", that is, loans totaling over $1,700,000. There is no mention in the security agreement of Mr. Inada's personal guaranties. Because the security agreement's "subject matter hereof" does not on the face of it include the personal guaranties executed by Mr. Inada, it is unclear whether the personal guaranties were meant to be superseded. Thus, we find that the Inadas have failed to carry their burden of showing no material factual issues exist on the question of whether Mr. Inada's loan guaranties were nullified by the security agreement.

▆ The Inadas next argue that the security agreement *expressly* discharged liability on all prior written agreements. They cite RCW 62A.3-603(1) of Washington's Uniform Commercial Code, which states: "The liability of any party is discharged to the extent of his payment or satisfaction to the holder . . .".[2] However, it is not clear that the October 1989 notes were discharged by the subsequent security agreement, a necessity to support the Inadas' argument:

---

[1] Had Mr. Inada been a named party to the security agreement, argument that his personal guaranties with SAS were superseded would be more persuasive. As it is, the integration clause of the security agreement "sets forth the entire agreement and understanding between the *parties hereto* with respect to the subject matter hereof . . .". (Italics ours.) Since Mr. Inada was not one of the "parties hereto", argument that his guaranties were canceled is by necessity an argument of implication. Such an argument raises a factual question of the parties' intent.

[2] By the integration clause, it appears SAS and PIP meant to substitute the new notes for the previous notes. If the security agreement constitutes payment of the prior contracts, the agreement is facially inconsistent because it denies the existence of the prior notes — "Loan has not been evidenced by any written instrument . . ." — whereas in fact, loans totaling $1,380,000 are evidenced by the written agreements of October 1989.

[T]he taking of a promissory note for an antecedent liability does not constitute a payment of the debt in the absence of an agreement to that effect, or evidence that such was the intention of the parties.

*Exchange Nat'l Bank v. Hunt*, 75 Wash. 513, 517, 135 P. 224 (1913).

Whether or not the first debts were discharged, reference to *Hunt* begs the central question: Did the parties intend to discharge Mr. Inada's personal guaranties? Reference to RCW 62A.3-603(1) cannot answer that question, because the personal guaranties were separate agreements between SAS and Mr. Inada rather than between the parties to the security agreement, SAS and PIP.

■ Under *Berg*, interpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence or (2) only one reasonable inference can be drawn from the extrinsic evidence. *Scott*, at 582.

In the present case, we find that interpretation of the security agreement may indeed depend upon extrinsic evidence, and more than one reasonable inference can be drawn from the security agreement as to what the parties intended in respect to Mr. Inada's personal guaranties. The security agreement between SAS and PIP does not refer to the personal guaranties. Mr. Inada was not a party to the security agreement. It is reasonable to conclude that SAS and Mr. Inada never intended to terminate the guaranties. Accordingly, we hold that SAS should be given the opportunity to prove that the parties intended the personal guaranties to remain in effect. We reverse the trial court's grant of summary judgment and, accordingly, reverse the trial court's award of attorney fees to Inada.

Because the basis of the suit is the personal guaranties containing no attorney fee provision, and Inada in his personal capacity was never party to the promissory notes or to the security agreement, neither party is entitled to attorney fees. *Watkins v. Restorative Care Ctr., Inc.*, 66 Wn. App. 178,

195, 831 P.2d 1085, *review denied,* 120 Wn.2d 1007 (1992). *See also Peoples Bank & Trust Co. v. Warner,* 35 Colo. App. 434, 535 P.2d 1132 (1975) (attorney fees against guarantor reversed because of the absence of any provision in the guaranty for costs or fees).

Reversed and remanded for further proceedings.

PEKELIS, A.C.J., and KENNEDY, J., concur.