[No. 18600-8-III.   Division Three.   April 18, 2000.]
JAMES P. KENNEY, JR., ET AL., *Appellants*, v. MELINDA
BOUCHER READ, ET AL., *Respondents*.

468

*Edward G. Johnson* of *Perkins Coie, L.L.P.*, for appellants.

*Hedley W. Greene*, for respondents.

BROWN, J. — The trial court granted summary judgment to Melinda Read allowing her to retain $17,500 from a letter of credit authorized by James Kenney, Jr. Mr. Kenney's appeal focuses on whether the trial court erred interpreting the letter of credit. We decide the court did not err with respect to the letter, but that it mistakenly granted summary judgment because an issue of fact regarding the parties' intent remained. Accordingly, we reverse and remand.

## FACTS

On February 9, 1996, Rook Broadcasting of Idaho, Inc. and Melinda Boucher Read entered into a Time Brokerage Agreement (TBA) for a one-year lease of Ms. Read's radio station pending the sale of the station to Rook. Rook's obligations under the TBA included the payment of $5,000 per month. The TBA required Rook to provide a letter of credit in the amount of $45,000 to secure nine monthly payments. Later, Rook formed a new corporation, KEZE, Inc., and assigned to it all rights under the TBA and the letter of credit.

Prior to the TBA, on February 7, 1996, James Kenney authorized his bank to issue the $45,000 letter of credit.

Mr. Kenney did not sign or negotiate the TBA. Nor did he review it prior to providing the letter of credit; although he did see a preliminary draft. Ms. Read did not give Mr. Kenney any inducements to provide the letter of credit. Mr. Kenney did not directly communicate with Ms. Read or her husband.

Mr. Kenney provided the letter of credit in consideration of promises and inducements by representatives of Rook. Based on Rook's representations, Mr. Kenney believed that Ms. Read could draw down the letter of credit solely if Rook did not make a monthly lease payment. Other than the fact that Mr. Kenney provided the letter as Rook's surety, the record does not clarify his relationship to Rook.

The letter of credit provided disjunctively that Ms. Read could draw $5,000 increments to cover missed lease payments or Ms. Read could draw down the entire amount if a substitute letter of credit was not supplied within 10 days of its March 1, 1997 expiration date. These provisions are consistent with terms in the TBA regarding the letter of credit.

Rook timely made all nine of the monthly payments secured by the letter of credit. Nonetheless, Ms. Read drew down the balance of the letter of credit on February 21, 1997, within 10 days of the letter of credit's March 1 expiration date, because no substitute letter had been provided. Ms. Read later returned $27,500 to Mr. Kenney, retaining $17,500 she claimed was due to her under the TBA for expenses in addition to the monthly payments. KEZE, Rook's successor, agreed: "Broker [KEZE] is indebted to Licensee [Ms. Read] for the sum of $17,500 under the Time Brokerage Agreement for the term ending March 15, 1997 which amounts shall be considered paid in full by application of funds from the Time Brokerage Agreement Letter of Credit."

Mr. Kenney sued, alleging Ms. Read's retention of the $17,500 constituted conversion or unjust enrichment. On cross motions for summary judgment, Ms. Read prevailed on the theory that no substitute letter of credit had been

supplied within 10 days of March 1, 1997. Mr. Kenney appealed.

## ANALYSIS

The issue is whether the trial court erred by granting Ms. Read summary judgment after deciding no factual dispute remained that a substitute letter of credit had not been supplied within 10 days of the deadline and concluding Ms. Read was legally entitled to withdraw the $45,000.

■ ■ When reviewing an order on summary judgment, this court engages in the same inquiry as the trial court. *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 690, 974 P.2d 836 (1999). "Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, if any, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Hollis*, 137 Wn.2d at 690; CR 56(c). "The facts and all reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo." *Hollis*, 137 Wn.2d at 690. The moving party has the burden of establishing the absence of an issue of material fact. *SAS Am., Inc. v. Inada*, 71 Wn. App. 261, 263, 857 P.2d 1047 (1993).

■ Letters of credit are well described by the Fourth Circuit:

> Letters of credit have long been used to facilitate the financing of commercial transactions between buyers and sellers by providing a certain and reliable means to ensure payment for goods delivered or services rendered. . . . [A] letter of credit is a tripartite arrangement under which one party establishes a credit, usually at a bank, on which it authorizes a third party to draw, provided certain conditions are met. The bank, as a mere stakeholder of the credit, issues a letter to the third party (known as the beneficiary) confirming the credit and stating the conditions for any draw to be made against it. In essence, the bank's promise to pay the beneficiary upon the beneficiary's timely presentation to the bank of documents conforming to the conditions delimited in the letter replaces the promise of the party which established the credit.

*Amwest Sur. Ins. Co. v. Republic Nat'l Bank*, 977 F.2d 122, 125 (4th Cir. 1992), *cert. denied*, 507 U.S. 985 (1993). In Washington State, RCW 62A.5-101 through 62A.5-117 govern letters of credit.[1] A letter of credit usually involves three distinct relationships:

> The typical letter of credit involves three parties (issuer, customer/applicant, and beneficiary) and three separate transactions: (1) the contract between the bank and its customer to issue a letter of credit; (2) the letter of credit in which the issuing bank agrees to pay the beneficiary when the conditions contained in the letter are complied with; and (3) the underlying contract between the customer and the beneficiary for which the letter of credit was obtained.

*Ensco Envtl. Services, Inc. v. United States*, 650 F. Supp. 583, 588 (W.D. Mo. 1986); *see also* former RCW 62A.5-103(1) (defining "letter of credit," "issuer," "beneficiary," and "customer"). A four-party letter of credit may also be valid. *Ensco*, 650 F. Supp. at 588-89. "The letter of credit is an instrument designed to enable the beneficiary to collect money to which it believes itself entitled and to hold such sums while any disputes are pending." *Andy Marine, Inc. v. Zidell, Inc.*, 812 F.2d 534, 537 (9th Cir. 1987).

Here, Mr. Kenney (customer or applicant) established the first relationship when he contracted with his bank (issuer) for the issuance of the letter of credit. The second relationship was Mr. Kenney's bank's obligation as the issuer to pay Ms. Read (beneficiary) per the terms of the letter of credit. The third relationship is that created by the TBA, the contract between Ms. Read and Rook.

■ The letter of credit itself is independent of the underlying transaction and any other related obligations. *See Alaska Textile Co. v. Chase Manhattan Bank*, 982 F.2d 813, 815 (2d Cir. 1992). Therefore, "the bank's obligation to the beneficiary is *independent* of the beneficiary's perfor-

---

[1]In 1997, the Legislature enacted new legislation governing letters of credit under Article 5. *See* LAWS OF 1997, ch. 56, §§ 1-18. The new legislation does not apply to the present case. RCW 62A.5-1013

mance on the underlying contract." 3 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, § 26-2, at 113 (4th ed. 1995). In view of this principle, courts generally "cannot turn to an underlying agreement in order to interpret a letter of credit unless references to the underlying agreement in the letter of credit explicitly create a condition for honoring a draft." *Andy Marine, Inc.*, 812 F.2d at 537.

Here, both parties rely on the terms of the letter of credit for their arguments. This reliance is, however, misplaced because the parties are not disputing whether the issuing bank should have honored the letter of credit. They agree that the bank properly did so. Rather, they are contesting whether Ms. Read may rightfully retain the proceeds from the letter of credit based on the underlying contract. Specifically, they contest whether the letter of credit was meant to secure only the nine monthly lease payments, or whether it was intended to secure all debts arising from the agreement.

■ Article 5 does not "deal at all with the underlying contract between the applicant and the beneficiary." WHITE & SUMMERS, *supra*, at 120. As explained in the code's comments:

> The legal relations between the issuer . . . and the beneficiary . . . and between the issuer and the customer . . . are spelled out in other sections of this Article. *The legal relations between the customer and the beneficiary turn on the underlying transaction between them.*

U.C.C. § 5-103, cmt. 3 (emphasis added). Where, as here, the issue concerns a dispute between the parties to the underlying contract after the issuing bank has honored its obligations under the letter of credit, courts may consider the underlying transaction in determining whether the beneficiary has performed the terms of the credit. *Global Network Techs., Inc. v. Regional Airport Auth.*, 122 F.3d 661, 665 (8th Cir. 1997). Thus, we may look to the underlying suretyship agreement.

■ Neither party has placed a separately drafted surety-

ship agreement in the record. The only documents in the record are the letter of credit and the TBA. When several instruments are made as part of one transaction, they will be read together and construed with reference to each other. *Boyd v. Davis*, 127 Wn.2d 256, 261, 897 P.2d 1239 (1995). This is true even when the instruments do not refer to each other and when the instruments are not executed by the same parties. *Id.; Turner v. Wexler*, 14 Wn. App. 143, 146, 538 P.2d 877, *review denied*, 86 Wn.2d 1004 (1975). Thus, we will look to these two documents to gain an understanding of the underlying suretyship agreement.

■ ■ A principal-surety relationship does not require a written contract. *Honey v. Davis*, 131 Wn.2d 212, 218, 930 P.2d 908 (1997). "Suretyship is a consensual and contractual relationship and is generally subject to the same rules applicable to simple contract law." *National Bank of Wash. v. Equity Investors*, 86 Wn.2d 545, 551, 546 P.2d 440 (1976). In general, "the liability of a surety is measured by the terms of [the] agreement." *King Equip. Co. v. R.N.&L. Corp.*, 1 Wn. App. 487, 491, 462 P.2d 973 (1969). Sureties and guarantors are not held liable beyond the express terms of their agreement. *Fancher Cattle Co. v. Cascade Packing, Inc.*, 26 Wn. App. 407, 410, 613 P.2d 178, *review denied*, 94 Wn.2d 1012 (1980). "Any material change in a surety's obligation without the surety's consent will discharge the surety's obligation." *State v. French*, 88 Wn. App. 586, 598-99, 945 P.2d 752 (1997).

■ The touchstone of contract interpretation is the intent of the parties. *Scott Galvanizing, Inc. v. Northwest EnviroServs., Inc.*, 120 Wn.2d 573, 580, 844 P.2d 428 (1993). In Washington, "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). Under the context rule,

"[d]etermination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subse-

quent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties."

*Id.* (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)); *see also* 72 C.J.S. *Principal and Surety* § 82 (1987) (intent or object of the parties to a suretyship agreement is gathered from the language of the instrument in light of the surrounding facts and circumstances).

"Intent is a question of fact to be discovered by reference to the instrument in its entirety and the manifest meaning of the language used by the parties." *White v. Wilhelm*, 34 Wn. App. 763, 772, 665 P.2d 407 (1983); *see also Martinez v. Miller Indus.*, 94 Wn. App. 935, 943, 974 P.2d 1261 (1999) (determining a contractual term's meaning involves a question of fact). " 'If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent; if two or more meanings are reasonable, a question of fact is presented.' " *Martinez*, 94 Wn. App. at 943 (quoting *Interstate Prod. Credit Ass'n v. MacHugh*, 90 Wn. App. 650, 654, 953 P.2d 812, *review denied*, 136 Wn.2d 1021 (1998)). "[I]nterpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Scott Galvanizing*, 120 Wn.2d at 582.

■■■ An initial matter is whether Ms. Read knew of the suretyship agreement. "In order that the surety may occupy that position and avail himself of the rights, defenses, and remedies of a surety as against the creditor, the fact of the suretyship agreement must be known to the creditor; otherwise, the surety may be held liable as principal obligor." 72 C.J.S. *Principal and Surety* § 27 (1987). Thus, "the existing rights of the creditor cannot be altered to include new duties to the alleged surety unless the creditor has knowledge of the event which creates the suretyship." *Hemenway v. Miller*, 116 Wn.2d 725, 729, 807 P.2d 863 (1991).

Here, Mr. Kenney provided the letter of credit in consideration of promises and inducements by representatives of Rook. Based on Rook's representations, Mr. Kenney believed that Ms. Read could only draw down the letter of credit if Rook did not make a monthly lease payment. Ms. Read did not give Mr. Kenney any inducements to provide the letter of credit, and Mr. Kenney never directly communicated with her or her husband. The letter of credit itself was not in Mr. Kenney's name, but was in the account name of Rook. Thus, an issue of fact remains as to whether Ms. Read knew of the suretyship agreement.

Even assuming that Ms. Read knew, factual questions remain. Ms. Read contends she could draw down the letter of credit based on either of the contingencies: if Rook failed to make the monthly payments or, alternatively, if Rook failed to provide a substitute letter of credit within ten days of the original letter of credit's expiration. This is not, however, the only plausible reading of the contingencies. *See Scott Galvanizing*, 120 Wn.2d at 582 (more than one plausible reading of an indemnity exception). Under the TBA, the purpose of the letter provided by Mr. Kenney was to secure the monthly payments. The TBA called for a second letter of credit in the amount of $100,000 that Ms. Read could draw down as liquidated damages. The TBA could be read as permitting Ms. Read to draw down the second letter ten days before expiration rather than the letter provided by Mr. Kenney. This reading is consistent with Mr. Kenney's deposition testimony that, based on his agreement with Rook, the intent was to have the letter cover only the monthly payments and no other debts.

A letter from the attorney who represented Rook and Ms. Read with regard to the TBA also supports this conclusion. In the letter, counsel acknowledged that there were two letters of credit. He noted that, if all of the monthly lease payments were made, there is no reason to hold or renew the $45,000 letter of credit provided by Mr. Kenney because the sole obligation secured by the letter was the monthly payments.

Summary judgment is proper only if the parties' written contract, when viewed in light of the parties' objective manifestations, has only one reasonable meaning; summary judgment is not proper if the contract has two or more reasonable but competing meanings. *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 9, 937 P.2d 1143 (1997). Here, Ms. Read has failed to meet her burden on summary judgment because she has failed to demonstrate that one reasonable inference can be drawn regarding the parties' intent. *See Scott Galvanizing*, 120 Wn.2d at 582. When the documents are viewed in a light most favorable to Mr. Kenney, an issue of material fact exists with regard to the intent of the parties.

Finally, we note the record is not altogether clear on whether Mr. Kenney was an accommodation surety or a compensated surety, although he appears to have been the latter. While accommodation sureties are favorites of the law, compensated sureties are not, and the rules of construction differ accordingly. *See National Bank*, 86 Wn.2d at 552-53. This may also be an issue for the trial court to address on remand.

## CONCLUSION

The trial court concluded that the drawdown was properly made under the provisions of the letter of credit. While we agree with this conclusion, a material issue of fact remains as to whether Ms. Read may retain the proceeds pursuant to the underlying contract. Thus, we hold the court erred when it granted summary judgment in favor of Ms. Read.

Reversed and remanded.

KURTZ, C.J., and SCHULTHEIS, J., concur.

After modification, further reconsideration denied July 13 and September 14, 2000.