[No. D021080. Fourth Dist., Div. One. Nov. 15, 1994.]

SAN DIEGO HOSPITAL ASSOCIATION et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
W. THOMAS COOMBE et al., Real Parties in Interest.

**COUNSEL**

Harrington, Foxx, Dubrow & Canter, Thomas E. Lotz and Jeffrey S. Doggett for Petitioners.

No appearance for Respondent.

Thorsnes, Bartolotta, McGuire & Padilla, Frederic L. Gordon and Douglas J. Billings for Real Parties in Interest.

**OPINION**

**BENKE, J.**—In this action Dr. W. Thomas Coombe (Dr. Coombe) sues San Diego Hospital Association, doing business as Sharp Healthcare and Sharp

Memorial Hospital (Sharp Memorial or the hospital), and the manufacturer of a KTP laser to recover damages for injuries he allegedly sustained while performing surgery at the hospital. The hospital's demurrer to the strict liability causes of action contained in the first amended complaint was overruled by the court. Because we conclude strict tort liability does not apply to a hospital supplying its expert medical staff with equipment to use in the care of their patients, we grant the hospital's petition for writ of mandate.

## BACKGROUND

This action arises out of personal injuries allegedly sustained by Dr. Coombe during surgery he performed at the hospital where he has staff privileges. A KTP laser supplied by the hospital for Dr. Coombe's use in the surgery allegedly caused Dr. Coombe's injuries. In addition to negligence and misrepresentation causes of action, Dr. Coombe included three separate strict liability causes of action for defective design, defective manufacture and failure to warn against both the manufacturer and the hospital.[1]

Sharp Memorial demurred to the three strict liability causes of action arguing the hospital primarily provided "services" and not a product to the doctor and his patient, and therefore could not be held strictly liable for the alleged injuries. The court overruled the demurrer. While acknowledging that cases have consistently held a hospital is not deemed in the business of selling products to the patients of its staff physicians, the court concluded those cases do not support the conclusion there is no strict liability by the hospital to a physician with staff privileges who is injured while using a product supplied by the hospital.

Sharp Memorial petitioned this court for a writ of mandate directing the trial court to vacate its order overruling the demurrer and to issue a new order sustaining the demurrer without leave to amend. We issued an order to show cause why the relief requested should not be granted and held oral argument.

## DISCUSSION

■ "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) We therefore assume Dr. Coombe was injured as

---

[1] Dr. Coombe also included spoliation of evidence causes of action against the hospital and the hospital's risk management company.

a result of his use of a KTP laser supplied by the hospital, the equipment was defective, the hospital failed to warn or train Dr. Coombe regarding the risk of injury, and Dr. Coombe had no knowledge of the defect and used the laser without inspection in an approved and authorized manner. We, however, do not assume the correctness of Dr. Coombe's legal conclusion that the hospital was "in the business of" manufacturing or supplying the KTP laser so as to incur strict liability.

■ Where a defective product causes injury to a human being, a manufacturer who placed the product on the market, knowing it is to be used without inspection for defects, will be strictly liable in tort. (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].) Strict liability has been extended to all those engaged in the overall producing and marketing enterprise, including distributors, wholesalers and retailers. (See *Kaminski* v. *Western MacArthur Co.* (1985) 175 Cal.App.3d 445, 455-456 [220 Cal.Rptr. 895].) Courts of this state have further relied on the rule of section 402A of the Restatement Second of Torts: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if [¶] (a) the seller is engaged in the business of selling such a product, and [¶] (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." (Rest.2d Torts, § 402A, pp. 347-348; *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465, 475 [85 Cal.Rptr. 629, 467 P.2d 229]; *Hector* v. *Cedars-Sinai Medical Center* (1986) 180 Cal.App.3d 493, 500 [225 Cal.Rptr. 595] (*Hector*); *Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1028 [98 Cal.Rptr. 187, 54 A.L.R.3d 250].)[2]

■ Courts have traditionally maintained a distinction between those rendering services and those selling products, holding that those providing services are not subject to strict liability but may be liable only on the basis of negligence or intentional misconduct. (See *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487 [275 P.2d 15].) That is because where services are rendered, whether performance is defective must be judged by ". . . what is reasonable under the circumstances and depends upon the actor's skill, judgment, training, knowledge and experience." (*Pierson* v. *Sharp Memorial Hospital, Inc.* (1989) 216 Cal.App.3d 340, 345 [264 Cal.Rptr. 673].) California courts have repeatedly held that strict liability may not be imposed against health care providers for injuries suffered by their patients.

In *Carmichael* v. *Reitz* (1971) 17 Cal.App.3d 958 [95 Cal.Rptr. 381], the court concluded a physician prescribing drugs could not be held strictly

---

[2]For a discussion of the application of section 402A in California, see *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 129-134 [104 Cal.Rptr. 433, 501 P.2d 1153].

liable for a patient's injuries. (*Id.* at p. 979.) The court distinguished those who are "mere conduits" for distributing a product to consumers and the physician who furnishes his services as a healer of illnesses. (*Id.* at pp. 978-979.) In the first instance the essence of the transaction relates to the product being sold while in the second instance the physician is being paid for his professional services and skill in diagnosing and treating a patient and not for a product. (*Ibid.*)

The concept was next applied in *Silverhart* v. *Mount Zion Hospital, supra,* 20 Cal.App.3d 1022 (*Silverhart*), in which the court held a hospital supplying a surgical needle could not be held strictly liable when the needle broke during surgery and became imbedded in the patient, reasoning:

"[T]he rationale of . . . *Carmichael* applies with equal force to a hospital in the exercise of its primary function which is to provide medical services. A hospital is not ordinarily engaged in the business of selling any of the products or equipment [it] uses in providing such services. The essence of the relationship between a hospital and its patients does not relate essentially to any product or piece of equipment it uses but to the professional services it provides.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"[A] hospital furnishing a surgical needle as part of the medical services it provides is not a seller engaged in the business of selling such needles but a user or consumer of such a needle, as was [the doctor] to whom such hospital facilities were made available in the performance of his professional services." (*Silverhart, supra,* 20 Cal.App.3d at pp. 1027, 1028.)

Strict liability for hospitals has also been rejected in a case dealing with blood transfusions based upon the reasoning stated in *Silverhart* as well as statutory grounds (see *Shepard* v. *Alexian Brothers Hosp.* (1973) 33 Cal.App.3d 606, 611 [109 Cal.Rptr. 132]), and in the implantation of a pacemaker (see *Hector, supra,* 180 Cal.App.3d 493). As stated by the court in *Hector*: "The essence of the relationship between hospital and patient is the provision of professional medical services necessary to effect the implantation of the pacemaker—the patient does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker. [Citations.] As a provider of services rather than a seller of a product, the hospital is not subject to strict liability for a defective product provided to the patient during the course of his or her treatment. [Citations.]" (*Id.* at p. 504.)

Our Supreme Court has held that a pharmacy may not be strictly liable for dispensing a prescription drug. (*Murphy* v. *E. R. Squibb & Sons, Inc.* (1985)

40 Cal.3d 672 [221 Cal.Rptr. 447, 710 P.2d 247].) In doing so, the court in part relied upon cases rejecting strict liability for hospitals, doctors and dentists. (*Id.* at p. 677.) The court characterized hospitals, doctors and dentists as providers of medical services and not suppliers of products and stated they were not in the business of selling drugs or devices but rather used the product in a course of treatment to effect a cure. (*Id.* at p. 679.)

It is clear from the foregoing authority that had Dr. Coombe's patient, rather than Dr. Coombe, been injured by a defective laser during the surgery, strict liability could not have been imposed against either the hospital or Dr. Coombe. The parties have not cited, nor have we located, any cases ruling on whether a different rule applies when a staff physician is injured while using hospital equipment in providing patient care.

■ Dr. Coombe contends that because the relationship between a hospital and patient and the relationship between a hospital and staff physician are "dramatically different" the cases holding a hospital patient may not bring a strict liability cause of action against health care providers are inapposite. Rather, Dr. Coombe argues, the relationship between a hospital and a staff physician is analogous to the relationships between a lessor and a lessee, a bailor and a bailee, and a licensor and a licensee, relationships which may permit the imposition of strict liability. (See *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722] [where an employee was injured on a ladder which was part of a truck leased to his employer, strict liability applied to lessor]; *Fakhoury* v. *Magner* (1972) 25 Cal.App.3d 58 [101 Cal.Rptr. 473] [where a tenant was injured when a couch collapsed, strict liability as a lessor of personal property applied to landlord who leased the furnished apartment]; *Garcia* v. *Halsett* (1970) 3 Cal.App.3d 319 [82 Cal.Rptr. 420] [where a user of a defective washing machine was injured, strict liability as a licensor applied to owner of the launderette].) Because he pays a fee as a staff physician to use the hospital's facilities, Dr. Coombe contends he is similarly situated to the plaintiffs in *Price*, *Fakhoury*, and *Garcia*. Dr. Coombe, citing *Kasel* v. *Remington Arms Co.* (1972) 24 Cal.App.3d 711 [101 Cal.Rptr. 314], also argues the hospital should be liable under the rule permitting strict liability against defendants who place products in the stream of commerce.

In essence, Dr. Coombe contends that while a hospital provides services to the patient, it provides products in the form of equipment and operating facilities to staff physicians allowing strict liability to be imposed in the case of the physicians but not in the case of patients. We disagree.

■ The purpose of imposing strict liability is to ensure the costs of injuries resulting from defective products are placed on the manufacturer and

others who place the product on the market rather than on injured persons who are powerless to protect themselves. (*Price* v. *Shell Oil Co., supra*, 2 Cal.3d at p. 251.) For a defendant, including a lessor, bailor or licensor, to be strictly liable, it must play an "integral and vital part in the overall production and marketing enterprise" which has placed the product on the market or, at the very least, it must provide a "link in the chain" of getting the product to the ultimate user or consumer. (*Silverhart, supra*, 20 Cal.App.3d at p. 1026.) The strictly liable defendant must be in "the business of" supplying the defective product to the user. (*Id.* at p. 1027.)

There is a fundamental difference between the defendants against which strict liability has been applied and the hospital. "[I]n the normal commercial transaction contemplated in the strict liability cases the essence of the transaction relates *solely* to the article sold, the seller is in the business of supplying the product to the consumer, and it is that, and that alone for which he is paid." (*Shepard* v. *Alexian Brothers Hosp., supra*, 33 Cal.App.3d at p. 611 [original italics].) The hospital is not in the business of selling or even leasing, bailing or licensing equipment to the physician. It is in the business of providing medical services to its patients and of providing the environment in which physicians may provide their own medical treatment to the patients.[3] Rather than being a supplier or an entity that places a product in "the stream of commerce," the hospital, as well as the physician, is an ultimate consumer of hospital equipment which is used in the treatment of the patient. (See *Murphy* v. *E.R. Squibb & Sons, Inc., supra*, 40 Cal.3d at p. 679; *Silverhart, supra*, 20 Cal.App.3d at p. 1028.) The fact the hospital provides equipment for the physician's use is incidental to the overriding purpose of providing medical services.

To conclude a hospital, in the course of making equipment available to the physician for surgical procedures, on the one hand provides a professional service to the patient, and on the other hand, sells, leases, or licenses the equipment to the physician would subvert the reasoning and basis for the exception to imposing strict liability on those who render services rather than provide products. The hospital staff and technicians must utilize their "skill, judgment, training, knowledge and experience" in the maintenance, inspection and provision of the hospital equipment no matter who an injured party may be. (See *Pierson* v. *Sharp Memorial Hospital, Inc., supra*, 216 Cal.App.3d at p. 345.) Whether a physician, hospital employee, bystander, or patient is injured, does not alter the nature of the hospital's function, i.e., providing professional services.

---

[3]We note that the hospital here is engaged in activities integrally related to its primary role of providing medical services and not in ancillary services such as operating a gift shop for which activities strict liability may apply. (See *Silverhart, supra*, 20 Cal.App.3d at p. 1027, fn. 4.)

■ Moreover, policy considerations underlying the imposition of strict liability are not served by imposing strict liability upon a hospital which is itself an ultimate user of the product. Nor is it consistent with such policy considerations to extend recovery to a physician who is in a far better position to inspect equipment for defects than to a patient who is denied recovery. To impose strict liability on a hospital would also ill serve the public good by discouraging hospitals that feared expanded liability from providing equipment utilizing recent technological advances.

■ Dr. Coombe argues public policy requires the hospital to bear responsibility for faulty maintenance of the laser. We agree. However, imposition of strict liability is simply unnecessary to reach any deficiencies in maintenance. The hospital remains liable for the consequences of any intentional or negligent acts that have been alleged. Public policy is not served by extending the application of strict liability imposed against lessors and licensors who are in the business of placing a product in the stream of commerce to a hospital which is in the business of providing medical treatment. We decline to do so.

### DISPOSITION

Let a writ of mandate issue directing the court to vacate its order overruling Sharp Memorial's demurrer to the three strict liability causes of action and to issue a new order sustaining the demurrer without leave to amend.

Kremer, P. J., and Froehlich, J., concurred.