[No. 20752-4-II.   Division Two.   August 21, 1998.]

PATRICIA MCKENNA, *Appellant*, v. HARRISON MEMORIAL HOSPITAL, ET AL., *Respondents*.

*Charles D. Williams,* for appellant.

*Reed P. Schifferman* of *Lane Powell Spears Lubersky*; and *William L. Holder* and *Danielle A. Hess* of *Reed McClure,* for respondents.

ARMSTRONG, J. — Patricia McKenna had a device surgically implanted in her spine at Harrison Memorial Hospital. The device subsequently broke, and McKenna sued Harrison for product liability. The trial court granted summary judgment for Harrison, ruling that, as a provider of professional services, it was exempt from liability under the Washington Product Liability Act (WPLA). McKenna appeals and we affirm.

## FACTS

Patricia McKenna underwent surgery at Harrison Memorial Hospital. Dr. Paul McCullough, McKenna's treating physician, performed the surgery, inserting a screw and rod device into her spine. McCullough is an independent contractor and not an employee of Harrison. The hospital, however, provided the device, other medical supplies, the facilities, and the nursing staff for McCullough to perform the surgery. The hospital charged McKenna approximately $6,700 for the device. Several months later, x-rays revealed that two of the device's screws had broken, requiring surgery to remove the device from McKenna's spine.

McKenna sued McCullough and Harrison, alleging a product liability claim under RCW 7.72 against the hospital. The trial court granted summary judgment for Harrison, ruling that, as a provider of professional services, the hospital was exempt from liability.

## ANALYSIS

■ The issue is one of law: Was Harrison Hospital, in supplying the surgical device, a product seller subject to RCW 7.72, or was it a provider of professional services exempt from liability under RCW 7.72? We review de novo an issue of law decided on summary judgment. *Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548-49 n.3, 859 P.2d 51 (1993).

Under RCW 7.72.040, a product seller is liable to a claimant for harm proximately caused by its negligence. The act

defines "product seller" as any person or entity that is "engaged in the business of selling products." RCW 7.72.010(1). Specifically excluded from the definition of "product seller" is "[a] provider of professional services who utilizes or sells products within the legally authorized scope of the professional practice of the provider." RCW 7.72.010(1)(b). The statute does not define "a provider of professional services."

In construing a statute, the court's primary objective is to carry out the intent of the Legislature. *State v. Pacheco*, 125 Wn.2d 150, 154, 882 P.2d 183 (1994). If a term is not defined in a statute, the court may look to common law or a dictionary for the definition. *Id.* at 154. As a general rule, the court presumes the Legislature intended undefined terms to mean what they did at common law. *Id.* Although the Legislature preempted common law product liability with the enactment of RCW 7.72,[1] courts still rely on the common law for the meaning of undefined statutory terms. "Legislative intent can . . . be derived from the body of common law that was preempted by the statute." *Buttelo v. S.A. Woods-Yates Am. Mach. Co.*, 72 Wn. App. 397, 401, 864 P.2d 948 (1993).

McKenna argues that because Dr. McCullough, an independent contractor, performed the surgery, Harrison was not the "provider of professional services." Further, according to McKenna, Harrison cannot show that it sold a product "within the legally authorized scope of [a] professional practice" because hospitals are not designated as health care professionals under RCW 18.120.020. We disagree.

RCW 70.41.020 defines a hospital for licensing purposes:

(2) "Hospital" means any institution, place, building, or agency which provides accommodations, facilities and services . . . for observation, diagnosis, or care, of . . . individuals . . .

---

[1]*See Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 853, 774 P.2d 1199, 779 P.2d 697 (1989).

suffering from illness, injury . . . for which . . . medical, or surgical services would be appropriate for care or diagnosis.

█ McKenna contends that under this statute Harrison could have provided medical or surgical services to her, but it chose not to by contracting with Dr. McCullough to perform the surgery. McKenna's reading of "services" is too narrow. Although Dr. McCullough performed the surgery, Harrison provided other services through its employees before, during, and after the surgery. For example, Harrison's registered nurses prepared McKenna for surgery, assisted during the surgery and cared for McKenna after the surgery.[2] In addition, hospitals routinely provide staff and services to patients through pharmacists, physical therapists, practical nurses, respiratory care practitioners, dietitians, and radiologic technicians, all of whom are listed as health care professionals under RCW 18.120.020.

Further, each of these health care professionals has a defined "scope of . . . professional practice."[3] And because Harrison acts only through its staff members, it follows that Harrison is acting within the particular staff person's professional practice when health care is provided to a patient. We conclude that under the statutes, Harrison was a provider of professional services and that the surgical device was sold to McKenna within the scope of such professional practice.

The common law of Washington supports our conclusion.

---

[2]The medical records filed with the superior court indicate that health care professionals, including physician's assistants and registered nurses, assisted with McKenna's surgery.

[3]RCW 18.120.020 lists health care professionals and the related chapters of the RCW which regulate these professions. Sections within these chapters define and limit the scope of the "practice" of such professionals. *See, e.g.,* RCW 18.71.011 (definition of the practice of medicine); RCW 18.25.005 (definition of chiropractic); RCW 18.22.035 (definition of practice of podiatric medicine and surgery); RCW 18.79.040 (definition of registered nursing practice); RCW 18.29.050 (defining scope of dental hygienist's functions); RCW 18.30.010(5) (defining practice of denturism); RCW 18.32.020 (defining practice of dentistry); RCW 18.34.060 (defining scope of practice of dispensing optician); RCW 18.53.010 (defining scope of practice of optometry); RCW 18.55.075 (defining scope of practice of ocularist).

In *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 785 P.2d 815 (1990), the court addressed the question whether a hospital's sale of blood for transfusion was a service or the sale of a product under the common law. Relying on *Gile v. Kennewick Pub. Hosp. Dist.*, 48 Wn.2d 774, 781, 296 P.2d 662, 59 A.L.R.2d 761 (1956), the court held that the transaction was a service, not the sale of a product. The court quoted from *Gile*:

> [T]he contractual relationship between a hospital and a patient is not one of sale but is one of service; that during treatment in the hospital penicillin, casts, bandages, or blood, for which additional charges are made, may be transferred from the hospital to the patient; and yet the *transfer is an incidental feature of the transaction and not a sale.*

*Howell*, 114 Wn.2d at 52 (quoting *Gile*, 48 Wn.2d at 781) (emphasis added).[4]

Furthermore, "[[O]ne who enters a hospital as a patient] goes there, not to buy medicine or pills, not to purchase bandages or iodine or serum or blood, but to obtain a course of treatment in the hope of being cured . . . ." *Gile*, 48 Wn.2d at 781 (quoting *Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 107, 123 N.E.2d 792 (1954)) (alteration in original).

Although *Howell* dealt only with the sale of blood, which is specifically excluded from the WPLA, the court's reasoning as to the relationship between a hospital and its patient is equally applicable within the WPLA to determine whether the hospital is principally a provider of professional services or a seller of goods.

Applying the reasoning of *Howell* and *Gile*, we agree with the trial court. McKenna entered Harrison Hospital, not to purchase the screw and rod device inserted in her spine, but to receive the surgery to which the device was inciden-

---

[4]*Accord Podrat v. Codman-Shurtleff, Inc.*, 384 Pa. Super. 404, 558 A.2d 895 (1989); *San Diego Hosp. Ass'n v. Superior Court*, 30 Cal. App. 4th 8, 35 Cal. Rptr. 2d 489 (1994); *Hector v. Cedars-Sinai Med. Ctr.*, 180 Cal. App. 3d 493, 225 Cal. Rptr. 595 (1986).

tal. And in providing ancillary surgical services, Harrison Hospital was not a seller of the device, but rather a provider of professional services. Harrison is, therefore, exempt from liability for the broken device under the Washington Product Liability Act.

We affirm.

SEINFELD and HUNT, JJ., concur.