[No. 20488-0-III. Division Three. August 5, 2003.]

ANDERSON HAY & GRAIN COMPANY, INC., *Appellant*, v. UNITED DOMINION INDUSTRIES, INC., ET AL., *Respondents*.

250

*William E. Pierson* (of *Bullivant Houser Bailey*), for appellant.

*Andrew C. Bohrnsen* (of *Bohrnsen & Stowe*) and *Andrew W. Maron* and *Christina G. Nelson* (of *Short, Cressman & Burgess P.L.L.C.*), for respondents.

BROWN, C.J. — Anderson Hay and Grain Co. appeals the summary judgment dismissal of its damage claims for a building collapse against building designer United Dominion Industries, Inc. (UDI) and builder Tri-Ply Construction. Mainly, we hold the trial court did not err in concluding both Tri-Ply and UDI were entitled to enforce a waiver of subrogation clause. We also hold the trial court did not err in dismissing Anderson's defective construction and breach of contract claims. Accordingly, we affirm.

## FACTS

Anderson Hay and Grain Co., Inc., is located in Ellensburg, Washington. In the summer of 1996, Tri-Ply Construction contracted with Anderson to build three steel hay storage buildings on Anderson's property. Building 21, like buildings 22 and 23, was designed and prefabricated by Varco-Pruden Buildings, a wholly-owned subsidiary of UDI.

The Anderson and Tri-Ply contract required the buildings to be designed, fabricated, and constructed to meet the

specifications of the Uniform Building Code (UBC), including snow load. The UBC requires roofs on agriculture buildings to withstand a snow load of at least 22 pounds per square foot. In late December 1996, building 21 collapsed following a heavy snowstorm, damaging the hay stored within. Anderson has been fully reimbursed for damage to building 21 and the contents, except for a small deductible not material here.

In 1999, Anderson sued Tri-Ply and UDI for damages caused by the building collapse. Anderson claimed Tri-Ply was liable for negligence, breach of contract, and defective construction. Anderson's complaint against UDI alleged defective design and breach of implied warranty of merchantability.

Summary judgment motions were filed. First, Tri-Ply filed for summary judgment against Anderson on each of its claims. Anderson responded with its own motion for partial summary judgment against Tri-Ply, contending it was entitled to summary judgment on its breach of contract claim and proximate cause. UDI then filed its motion against Anderson, later joined by Tri-Ply, seeking dismissal based upon an antisubrogation clause in the contract between Anderson and Tri-Ply.

The trial court issued a memorandum decision denying Anderson's motion and granting Tri-Ply's and UDI's motions. The trial court granted Tri-Ply's motion after concluding Anderson had failed to submit any credible evidence establishing the snow load on the building when it collapsed. The court reasoned without evidence of the actual pounds per square feet on the roof at the collapse, Anderson could not prove its claims. The trial court also held the antisubrogation clause applied to both Tri-Ply and UDI, barring Anderson's claims. Anderson appealed all orders, but has now conceded Tri-Ply was not negligent.

## ANALYSIS

### A. Waiver of Subrogation

The issue is whether the trial court erred in granting summary judgment dismissal against Anderson in favor of both Tri-Ply and UDI by operation of the waiver of subrogation clause in the agreement between Anderson and Tri-Ply.

Summary judgment review is de novo; we engage in the same inquiry as the trial court after considering all facts and reasonable inferences in favor of the nonmoving party. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003). Summary judgment is proper when " 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting CR 56(c)). This standard of review applies throughout our discussion.

Anderson acknowledges it has been reimbursed for all of its damages from insurance proceeds. The Anderson and Tri-Ply agreement (Agreement) partly states:

> 9.3.3 The Owner and Contractor waive all rights against (1) each other and the Subcontractors, Sub-subcontractors, agents and employees each of the other, and (2) separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph, or any other property insurance applicable to the Work. . . .

Clerk's Papers (CP) at 95.

■ ■ Our primary goal in interpreting contracts is to determine the parties' intent. *Kenney v. Read*, 100 Wn. App. 467, 474, 997 P.2d 455, 4 P.3d 862 (2000). The parties' intent will be determined from considering " 'the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpreta-

tions advocated by the parties.' " *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990) (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)).

■ Generally, what the parties intend is a question of fact. *Kenney*, 100 Wn. App. at 475. If there are two or more reasonable meanings to contract language, a question of fact is presented and summary judgment is improper. *Id.* Solely, when interpretation does not depend on extrinsic evidence, or when extrinsic evidence leads to one reasonable interpretation, can intent be decided as a matter of law on summary judgment. *Id.* All facts and reasonable inferences must be considered in a light most favorable to Anderson. *Id.* at 477.

■ Absent fraud, antisubrogation waivers are valid and enforceable in Washington. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 341, 831 P.2d 724 (1992). In *Touchet*, a new grain storage building collapsed. The owner sued the contractor, the contractor's surety, and the fabricating subcontractor. The contract in *Touchet* contained a standardized American Institute of Architects form contract. The parties waived subrogation rights to the extent of insurance coverage on losses arising from or in connection with the project, but the waiver did not extend to subcontractors. After completion, the owner canceled its casualty insurance and added the building to its property insurance. Soon, the building collapsed from faulty construction or design.

The *Touchet* court upheld the waiver of subrogation clause as to the owner's claim against the contractor. *Id.* at 341-42. The court rejected the owner's argument that the waiver provision applied only to the casualty insurance required by the contract, noting the contract waived subrogation to the extent any losses were covered by insurance. *Id.* at 342. However, the *Touchet* court also held the waiver of subrogation clause did not protect the building's fabricator because the fabricator was not specifically

named as a beneficiary in the waiver clause, and was not a party to the contract. *Id.* at 342-43.

 Regarding Tri-Ply, Anderson incorrectly contends Tri-Ply is precluded from asserting the waiver provision under the general rule that a breaching party is precluded from enforcing the contract against a nonbreaching party, citing *Parsons Supply, Inc. v. Smith*, 22 Wn. App. 520, 523, 591 P.2d 821 (1979). This rule applies solely when the party's performance of the breached promise was a condition precedent to the other party's performance. *State v. Trask*, 91 Wn. App. 253, 273-74, 957 P.2d 781 (1998). Here, no condition precedent exists, thus the rule is inapplicable. Accordingly, Tri-Ply is protected by the waiver.

Regarding UDI, Anderson contends no evidence shows Anderson intended UDI to be a beneficiary under its insurance policies. But, UDI does not claim a beneficiary or coinsured status. Instead, UDI claims protection as a "separate contractor" under the waiver of subrogation clause. In essence, UDI claims an equal status with Tri-Ply, its subcontractors, subsubcontractors, agents and employees. Under the circumstances, we agree with UDI.

 Although not separately defined, the term "separate contractor" is not superfluous. *See Pub. Employees Mut. Ins. Co. v. Sellen Constr. Co.*, 48 Wn. App. 792, 796, 740 P.2d 913 (1987) (contracts are interpreted to give effect to each part of the instrument). UDI argues because it does not fall within the contract definitions for subcontractor or sub-subcontractor, it must be a separate contractor. While UDI's function resembles that of an agent or employee of Tri-Ply, Tri-Ply separately contracted with UDI to fill a critical role, design and fabrication. Anderson not only knew of this separate contractor role, it required UDI's design, drawings, and specifications be made part of the Agreement.

Thus, UDI's role was understood by Anderson from the start; Tri-Ply used UDI in its proposal. After Anderson's design approval, and incorporation of the design documents into the Agreement, UDI fabricated the materials for deliv-

ery to the jobsite under contract with Tri-Ply. Then, Tri-Ply performed the necessary construction services. In context, the "separate contractor" meaning was clear.

Anderson knew UDI would not perform work at the jobsite and would not come within the subcontractor or sub-subcontractor definitions. Yet, Anderson wanted UDI's fixed role in the Agreement. Whether UDI is considered Tri-Ply's agent, employee, or an independent, separate contractor to either Tri-Ply or Anderson, the result is protection under the waiver of subrogation clause. The trial court correctly reasoned the waiver of subrogation clause was expansive and included UDI as a separate contractor. Under these facts, separate contractor includes an entity hired by either party to perform work on the project not strictly within the subcontractor or sub-subcontractor definition.

Anderson argues UDI is not a contractor at all, but is rather a mere vendor or supplier. In support, Anderson points out that UDI sold a prefabricated building to Tri-Ply, and UDI did not perform any work on the jobsite. Our above discussion applies equally to this argument.

Next, Anderson argues even if the waiver of subrogation does apply, it provides immunity solely for damages to the "Work," and does not include the damaged hay. Under the antisubrogation clause, the parties agreed to waive claims against each other to the extent damages are covered by "any other property insurance applicable to the Work." CP at 95. The contract defines the "Work" as the "completed construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction." CP at 81.

Anderson relies principally upon *Sellen*, 48 Wn. App. 795. There, Division One of this court decided water damage to certain files, stored away from the work site, caused by Sellen's negligence was not attributable to the contemplated "Work." However, here the damaged hay was unquestionably at the work site. Thus, *Sellen* is distinguishable from our facts. Therefore, we do not address UDI's

argument that we reject *Sellen* and follow other jurisdictions that look to the type of insurance, not the type of property, to determine if the waiver provision applies. *See Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal. App. 4th 1194, 32 Cal. Rptr. 2d 144, 145 (1994). The number of Anderson policies does not affect the outcome here.[1] In any event, the Agreement does not preclude purchase of more than one policy to cover this loss.

## B. Defective Construction Claim

The issue is whether the trial court erred in dismissing Anderson's defective construction claim at summary judgment and concluding no liability existed under chapter 7.72 RCW, the Washington product liability act (WPLA).

In its summary judgment motion regarding Anderson's defective construction claim, Tri-Ply did not dispute Anderson's evidence of the snow load on the building when it collapsed, and even acknowledged the building collapsed under a snow load of 25 pounds per square foot (psf), citing Anderson's amended complaint.

In response to Tri-Ply's motion, and in support of its own motion for summary judgment, Anderson submitted one page from the deposition of Joe Bozick, a structural engineer, who related he calculated the snow load on the building when it collapsed at 20 psf. In its recitation of undisputed facts, the trial court acknowledged that the building collapsed under a snow load of 20 to 30 pounds per square foot. The trial court granted Tri-Ply's motion after finding Anderson's evidence on the snow load to be inadequate to show causation.

---

[1] UDI has moved to strike those portions of Anderson's second amended opening brief that reference two different insurance policies. A commissioner of this court denied UDI's motion, concluding the evidence was before the trial court as part of Anderson's response to Tri-Ply's motion. UDI moved to modify the commissioner's ruling. The ruling is correct. Even though the policies are irrelevant, we deny UDI's motion.

■ ■ Anderson, citing ER 705, contends the trial court improperly disregarded Mr. Bozick's opinion. However, ER 705, by its language, is limited to trial testimony, not declaration testimony. Washington courts have rejected the rule's application in summary judgment proceedings, finding instead that an expert's testimony for summary judgment must be supported by the specific facts underlying the opinion. *Rothweiler v. Clark County,* 108 Wn. App. 91, 100-01, 29 P.3d 758 (2001), *review denied,* 145 Wn.-2d 1029 (2002); *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.,* 79 Wn. App. 368, 374, 901 P.2d 1079 (1995); *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 49 Wn. App. 130, 134-35, 741 P.2d 584 (1987).

Next, Anderson asserts that even if Mr. Bozick's opinion on the snow load was insufficient for summary judgment purposes, other material facts remain to preclude summary judgment, mainly bearing upon Tri-Ply's workmanship. However, Tri-Ply points out that Anderson has failed to produce any evidence that Tri-Ply's workmanship caused the collapse, suggesting this is merely another way to breathe life into Anderson's abandoned negligence claim.

The WPLA provides that a product seller is liable for harm proximately caused by negligence, breach of express warranty, or intentional misrepresentation. RCW 7.72.040. Anderson's complaint alleged the negligence prong, contending Tri-Ply violated the statute by constructing an unreasonably safe roof on Building 21. After Tri-Ply argued in its summary judgment motion that Anderson could not present evidence that Tri-Ply's workmanship caused the building to collapse, Anderson unsuccessfully responded by changing its theory of the case from negligence to a breach of express warranty and alleging Tri-Ply was also a product seller or manufacturer.

■ On appeal, Anderson asserts Tri-Ply, as a product seller, is liable under the WPLA for breach of express warranty that the building would conform to the snow load specification of 22 psf. Tri-Ply responds it is not a product seller, but rather a provider of professional services, and

therefore exempt from liability under the act. Whether Tri-Ply is a product seller or service provider is a question of law, determined by a de novo review. *McKenna v. Harrison Mem'l Hosp.*, 92 Wn. App. 119, 121, 960 P.2d 486 (1998).

A "product seller" is defined under the act as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption." RCW 7.72.010(1). However, a product seller does not include a "provider of professional services who utilizes or sells products within the legally authorized scope of the professional practice of the provider." RCW 7.72.010(1)(b). The parties agree UDI designed and fabricated the building, and Tri-Ply assembled the prefabricated parts on Anderson's property.

Courts have distinguished between product sellers and providers of professional services by looking at the contract to determine if its primary purpose was to provide a service or a product. Contractors who provide architectural, engineering, and inspection services are not product sellers. *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 822 n.1, 881 P.2d 986 (1994).

In *McKenna*, a patient sued the hospital for products liability related to a screw and rod device surgically inserted into her spine. The *McKenna* court held the hospital was a provider of professional services and not a product seller because the primary purpose of a hospital was to provide medical services, and the use or sale of any products was merely incidental to the primary purpose. *McKenna*, 92 Wn. App. at 122-24.

In *Almquist v. Finley School District No. 53*, 114 Wn. App. 395, 57 P.3d 1191 (2002), a school district was sued for preparing and serving tacos containing infected meat. This court held the school was liable as a manufacturer because the preparation and sale of lunch was independent of any educational services provided by the school. *Id.* at 403.

Here, as in *McKenna*, the Anderson and Tri-Ply contract was primarily for construction services. Anderson knew of

UDI's role and incorporated the UDI design separately into the Agreement as part of the contract documents. In this sense, Anderson selected the UDI products to be constructed by Tri-Ply. Thus, UDI's prefabricated products were incidental in Tri-Ply's contractual obligation to provide construction services. Moreover, Anderson produced no evidence showing Tri-Ply, as a general contractor, sells prefabricated buildings outside its contractor's role.[2]

We conclude Tri-Ply was not a product seller. Anderson does not argue Tri-Ply is a manufacturer. The trial court did not err granting summary judgment.

## C. Breach of Contract Claim

■■■ The issue is whether the trial court erred in granting summary judgment dismissal of Anderson's claim of breach of contract and deciding Tri-Ply did not breach an implied covenant of good workmanship by failing to exercise ordinary care in constructing the building. This alleged cause of action may not exist in Washington. Generally, construction contracts do not contain implied warranties for workmanlike performance. *Urban Dev., Inc. v. Evergreen Bldg. Prods., L.L.C.*, 114 Wn. App. 639, 646, 59 P.3d 112 (2002).

Assuming such a cause of action, again, no evidence shows Tri-Ply's workmanship caused the building to collapse. While Mr. Bozick testified some construction defects existed, he conceded the defects were minor and did not cause the building's collapse. Anderson acknowledges this evidentiary gap, but argues the construction must be defective because the other two buildings withstood the same snow load. Anderson failed to develop this argument. RAP

---

[2] *See Monroe v. Bardin*, 249 A.D.2d 650, 671 N.Y.S.2d 191 (1998) (absent any showing of a link in distributive chain, general contractor not liable under strict products liability theory); *Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731 (Tex. Ct. App. 1990) (selling steel columns and erection plates incidental to construction services); *Chubb Group of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766, 780-81 (Mo. Ct. App. 1983) (consumer protection strict liability principles not applicable to contractor erecting commercial building).

10.3(a)(5). Further, Mr. Bozick acknowledged, the defect, if any, rested with UDI.

In sum, while alleging a breach of contract, Anderson's theory rests on the premise that Tri-Ply negligently constructed the building. However, Anderson's expert focused on UDI's design or fabricated products as the basis for liability. Because Anderson does not show Tri-Ply's negligent performance or specific contractual warranty, this theory fails. At most, Tri-Ply warranted it would perform its work according to UDI's design specifications. Since Tri-Ply established it assembled the buildings in accordance with UDI's specification, and Anderson failed to show otherwise, Tri-Ply was entitled to summary judgment on the breach of contract claim.

Affirmed.

KURTZ and KATO, JJ., concur.

Review denied at 151 Wn.2d 1016 (2004).