**ANDY MARINE, INC., a California corporation, Plaintiff-Appellee,**

v.

**ZIDELL, INC., an Oregon corporation, Defendant-Appellant,**

v.

**The COMMERCIAL BANK OF KOREA, LTD., a Korean corporation, Defendant-Appellee.**

No. 85–4104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1986.

Decided March 11, 1987.

W. Roger Scott, Los Angeles, Cal., David P. Roy, Portland, Or., for plaintiff-appellee.

Mildred J. Carmack, John R. Faust, Portland, Or., for defendant-appellant.

Before ANDERSON, HUG, and CANBY, Circuit Judges.

CANBY, Circuit Judge:

On January 31, 1983, Andy Marine, Inc. ("Andy Marine") chartered a barge from Zidell, Inc. ("Zidell") under a bareboat charter party. Pursuant to the charter party, Andy Marine provided Zidell with a $250,-000 irrevocable standby letter of credit from the Commercial Bank of Korea, Ltd. ("Bank"). The letter of credit guaranteed payments due under the charter party from April 25, 1984 to April 24, 1985. The charter party in turn provided that in the event of breach by the charterer, Andy Marine, Zidell had the right to terminate the agreement, repossess the vessel and recover costs and expenses incurred in restoring the vessel to its original condition. A breach occurred, and Zidell repossessed. On April 23, 1985, Zidell presented an invoice for $129,336.98 to the Bank and sought to draw down the letter of credit in that amount. The Bank claims, and Zidell does not dispute, that the invoice was an estimate of costs that Zidell expected to incur in the future to restore the vessel, rather than an itemized list of actual expenditures.

Andy Marine sued to enjoin the Bank from honoring Zidell's draft, and Zidell now appeals the district court's declaratory judgment and permanent injunction in Andy Marine's favor.[1] We agree with the appellant that the district court misinterpreted the terms of the letter of credit and

---

1. By an order filed March 11, 1986, this court ruled that, pursuant to 11 U.S.C. § 362, the appeal against Andy Marine was "stayed pending resolution of its petition in bankruptcy or until such time as relief from stay is granted by the bankruptcy court, whichever occurs first." The court ruled that, because the Bank is not a debtor and is not included in the automatic stay, the appeal might proceed against the Bank.

misapplied Or.Rev.Stat. § 75.1140 (1985). We therefore reverse.

## DISCUSSION:

 The Bank's agreement with Zidell is a standby letter of credit, a commercial instrument that obliges the issuer to pay the beneficiary only if the beneficiary presents documents certifying that the customer has defaulted on the contract that underlies the letter. *See* J. White & R. Summers, Uniform Commercial Code § 18–2 at 713 (2d ed. 1980). As the district court noted, the general rule is that an issuer's obligation to a beneficiary does not depend upon the fact of default, but upon the presentation of documents as evidence of default. *See Wichita Eagle and Beacon Publishing Co., Inc. v. Pacific National Bank of San Francisco*, 493 F.2d 1285, 1286 (9th Cir.1974). Under Or.Rev.Stat. 75.1140,[2] the issuer of a letter of credit must honor a draft or demand for payment that complies with the terms of the credit, regardless of whether the documents conform to the underlying contract, unless (1) the documents do not conform to the warranties made on negotiation or transfer of a document of title or of a security; or (2) the documents are forged or fraudulent; or (3) there is fraud in the transaction. *See* White & Summers § 18–6 at 734; *see also Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. 343, 359, 336 A.2d 316, 324 (1975) (injunction against honor is proper only if beneficiary has committed fraud).

In the present case, the Bank's letter of credit promised to honor drafts for sums due under the charter agreement between Andy Marine and Zidell:

We hereby open our irrevocable letter of guarantee ... for US$250,000 ... in your favor for the account of A.K. Marine, Inc., 3450 Wilshire Blvd., # 215 Los Angeles, CA 90010, as evidence of our unconditional undertaking and agreement to pay on sight your draft or drafts in any amount ... at any time hereafter due or to become due on account of charter hire or any installment(s) thereof and other sums payable ... to or for your benefit or order under or by virtue of the terms and provisions [of] the bareboat charter party first above referenced, for which sum or sums in invoice or statement of account shall have been issued by you to the charterer and which sum or sums you shall have not received payment as of the fifteenth (15th) day following the date such sum or sums are due in accordance with such terms and provisions....

Drafts shall be delivered by hand, or means of registered U.S. Mail to the Commercial Bank of Korea, Ltd., Los Angeles Agency, 611 W. 6th St., Los Angeles, CA. 90017 and shall be accompanied by a copy of the invoice(s) or statement(s) stated or itemized and by a

---

**2.** Or.Rev.Stat. § 75.1140 states in relevant part:
**Issuer's duty and privilege to honor; right to reimbursement.**
(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.
(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title pursuant to ORS 77.5070 or of a certificated security pursuant to ORS 78.3060 or is forged or fraudulent or there is fraud in the transaction:

(a) The issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course as provided in ORS 73.3020 and in an appropriate case would make it a person to whom a document of title has been duly negotiated as provided in ORS 77.5020 or a bona fide purchaser of a certificated security as provided in ORS 78.3020; and

(b) In all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

statement in writing, signed by an officer of your company, that such sum(s) are justly due and have not been received by you as of the fifteenth (15th) day following the date the same became due under the items and provisions of said bareboat charter party.

Zidell's invoice purported to be a statement of repair costs due under section twelve of the charter agreement. Section twelve states:

If the Charterer should [default on its obligations] then Owner ... shall have the right at its option to terminate this Agreement, take possession of the Vessel wherever it may be found, with or without legal process. In any such case Charterer covenants and agrees on demand to pay Owner all costs and expenses incurred in restoring the Vessel to the same condition as it was on delivery, excepting ordinary wear and tear resulting from Charterer's reasonable, prudent and careful use of the vessel in employments in which the same is suited by design, age and condition upon and after delivery and in strict accordance with the provisions of the Agreement plus all costs and expenses incurred in returning same to the Owner.

It is clear from the record that the invoice for repairs that Zidell presented to the Bank listed expected repair costs, not sums actually expended. The district court reasoned that compliance with section 12 of the charter agreement was one of the conditions specified in the letter of credit and that Zidell's draft, which "represented estimates of expenses that Zidell expected to pay in the future, and not 'expenses incurred,'" therefore did not comply with the terms of the letter of credit. The court then concluded that Andy Marine was entitled to a declaratory judgment that Zidell's invoice did not represent sums due or payable under the letter of credit. The court also concluded that Or.Rev.Stat. § 75.-1140(2)(b) authorized the court permanently to enjoin the Bank from honoring Zidell's draft.

There is no dispute that Zidell's draft satisfied the documentary conditions of the letter of credit.

We disagree with the district court's interpretation of the letter of credit and with its application of Or.Rev.Stat. § 75.-1140. First, we do not interpret the letter of credit as containing an explicit condition requiring compliance with the terms of the charter party. We cannot turn to an underlying agreement in order to interpret a letter of credit unless references to the underlying agreement in the letter of credit explicitly create a condition for honoring a draft. *See Pringle-Associated Mortgage Corp. v. Southern National Bank*, 571 F.2d 871, 874 (5th Cir.1978). The letter of credit is an instrument designed to enable the beneficiary to collect money to which it believes itself entitled and to hold such sums while any disputes are pending. *See Itek Corp. v. First National Bank of Boston*, 730 F.2d 19, 24 (1st Cir.1984) (letter of credit may be used "to make certain that contractual disputes wend their way towards resolution with money in the beneficiary's pocket rather than in the pocket of the contracting party"). In the absence of clear evidence that the parties intended the letter to include nondocumentary conditions, it defeats the whole purpose of the letter of credit to examine the rights and wrongs of a contract dispute to determine whether the letter should be paid.

In the present case, the letter of credit explicitly creates several documentary conditions for honor. Drafts must be: (1) delivered by mail or by hand; (2) accompanied by copies of invoices or statements; and (3) accompanied by a written statement, signed by an officer, that the sums requested have been due for at least fifteen days and have not been received. The precise language used to create these conditions stands in sharp contrast to the document's one general reference to the underlying charter party agreement. There is certainly no clear evidence that the parties intended to create a nondocumentary condition for honor, and we decline to read such a condition into the letter of credit.

Second, we conclude that the district court misapplied Or.Rev.Stat. § 75.-1140. The district court did not find that Zidell's draft was forged or fraudulent or that there was fraud in the transaction, and it is clear from the record that there was no fraud on the part of Zidell. Zidell certainly had a "plausible or colorable" claim under the charter agreement for the costs of repairing the boat after repossession. *See Itek Corp. v. First National Bank of Boston,* 730 F.2d at 25. In the absence of fraud or one of the other specific statutory exceptions, Or.Rev.Stat. § 75.1140(2)(b) does not authorize a court to enjoin an issuer from honoring a facially conforming draft.

To summarize our holding: (1) compliance with section twelve of the charter agreement was not a condition of the letter of credit; (2) the sums listed in Zidell's invoice were due and payable under the letter of credit; and (3) Or.Rev.Stat. § 75.-1140 did not authorize the district court to enjoin the Bank from honoring Zidell's draft.

REVERSED.