**WARD PETROLEUM CORPORATION,**
Plaintiff–Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION**, as Receiver for the First National Bank and Trust Company of Oklahoma City, N.A.; Federal Deposit Insurance Corporation, as Insurer of deposits at First National Bank and Trust Company of Oklahoma City, N.A.; Continental Illinois National Bank & Trust Company of Chicago, N.A., Defendants–Appellees.

No. 88–1813.

United States Court of Appeals,
Tenth Circuit.

May 21, 1990.

J. Randall Robinson (Martha L. Marshall with him on the briefs) of Musser, Bunch, Robinson & Hirsch, Oklahoma City, Okl., for plaintiff-appellant.

Pamela S. Anderson (Theodore Q. Eliot and Oliver S. Howard, with her on the brief) of Gable & Gotwals, Tulsa, Okl., for defendant-appellee Federal Deposit Ins. Corp.

Mack J. Morgan III of Crowe & Dunlevy, Oklahoma City, Okl., for defendant-appellee Continental Illinois Nat. Bank and Trust Co. of Chicago, N.A.

Before LOGAN, BARRETT and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Ward Petroleum Corporation (Ward) appeals from summary judgment in favor of defendants Federal Deposit Insurance Corporation (FDIC), as receiver for First National Bank and Trust Company of Oklahoma City (First), and Continental Illinois National Bank and Trust Company of Chicago (Continental) on Ward's claim for wrongful dishonor of its draft under a standby letter of credit.

Ward was the operator on various oil leases, and in this capacity sold crude oil to Oklahoma Refining Company (ORC). To insure payment for these sales Ward required ORC, as the account party, to obtain an irrevocable standby letter of credit with Ward as beneficiary from First, with Continental participating in the issue. The letter of credit provided that Ward could draw under it upon presentation of a sight draft accompanied by the following:

"[1] A signed statement by an officer of Ward Petroleum Corporation that the amount currently drawn hereunder represents balance proper and legally past due to Ward Petroleum Corporation by Oklahoma Refining Company for sales of crude oil.

[2] Invoices must reference purchase from one or more of the following Leases: [forty-nine specified leases and wells]."

I R. tab 1, exhibit A.

After ORC obtained the letter of credit, it filed a bankruptcy petition on or about September 14, 1984. In the following month, Ward made a series of draws under the credit, and on October 30, 1984, the day before expiration of the credit, Ward submitted a draft for $586,616.89, accompanied by a certification that the "amount drafted represents the now known balance proper and legally past due for sales of crude oil to Oklahoma Refining Company by Ward Petroleum Corporation as described in the attached invoice." I R. tab 1, exhibit B, at 1. The attached invoice listed only leases specified in the letter of credit and contained the following statement: "This invoice is for the amount due Ward Petroleum Corporation for the purchase of production from the following wells by Oklahoma Refining Company ... *that was held in suspense trust accounts as of September 14, 1984.*" *Id.* at 3 (emphasis added). First did not honor this draft, contending that "[t]he documents ... indicate on their face that the amount drawn ... does not 'represent balance proper and legally past due to Ward Petroleum Corporation by Oklahoma Refining Company for sales of crude oil.' " *Id.* at 7.

Ward sued the FDIC, as receiver of First, and Continental for wrongful dishonor of the draw and fraudulent inducement, and for deposit insurance from the FDIC as insurer of First. All parties moved for summary judgment, and the district court granted summary judgment against Ward on all claims. This appeal addresses only the wrongful dishonor claim.[1]

---

1. Ward abandons its fraudulent inducement claim on appeal. The district court did not address Ward's claim for deposit insurance, because it is dependent upon success on the wrongful dishonor claim. Since we reverse the district court's summary judgment on the wrongful dishonor claim, on remand the district court should reconsider Ward's claim for deposit insurance.

## I

First's dishonor of Ward's draft was wrongful only if the draft complied with the terms of the letter of credit. *See Arbest Constr. Co. v. First Nat'l Bank & Trust Co.*, 777 F.2d 581, 584 (10th Cir.1985) (Oklahoma law); Okla.Stat.Ann. tit. 12A, § 5–114(1). In this regard, the issuer's duties are limited and straightforward. "An issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit...." Okla.Stat.Ann. tit. 12A, § 5–109(2). "The duty of the issuing Bank is ministerial in nature, confined to checking the presented documents carefully against what the letter of credit requires." *American Coleman Co. v. Intrawest Bank*, 887 F.2d 1382, 1386 (10th Cir.1989).

▆ In this case, a ministerial review of the letter of credit and documents presented thereunder reveals that, as required by the credit, Ward certified the amount of the draft as past due from ORC for sales of crude oil and the supporting invoice referred only to leases and wells set forth in the credit. Nonetheless, defendants argue, and the district court agreed, the statement in the invoice that the amounts were held in suspense trust accounts contradicted Ward's certification that the amounts were past due to Ward, citing Int'l Chamber of Commerce, Pub. No. 400, *Uniform Customs and Practice for Documentary Credits* art. 15 (1983 rev.) ("Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in accordance with the terms and conditions of the credit."); *see also* 2 J. White & R. Summers, *Uniform Commercial Code* § 19–5, at 35–36 (3d ed. 1988) [hereinafter *White and Summers on the UCC*]. We are not so persuaded.

The parties agree that proceeds from the sale of oil or gas are placed in suspense trust accounts when there is uncertainty as to the person or entity entitled to receive the proceeds. Based upon this, the district court concluded that First was entitled to dishonor Ward's draft, because invoicing amounts held in suspense "at least raises

serious questions concerning whether the amount certified was a 'balance proper and legally past due' to Ward as certified by Ward," I R. tab 68, at 8, apparently relying upon the standard set forth in *Breathless Assocs. v. First Sav. & Loan Ass'n*, 654 F.Supp. 832, 837 (N.D.Tex.1986) ("A discrepancy ... should not warrant dishonor unless it reflects an increased likelihood of defective performance or fraud on the part of the beneficiary."), *criticized in* J. Dolan, *The Law of Letters of Credit* ¶ 6.03, at S6–5 (Supp.1990). The error in this approach is that it violates the independence principle, which is the cornerstone of the commercial vitality of letters of credit.

▆ The independence of the letter of credit from the underlying commercial transaction facilitates payment under the credit upon a mere facial examination of documents; it thus makes the letter of credit a unique commercial device which assures prompt payment. *See generally* J. Dolan, *The Law of Letters of Credit* ¶¶ 2.01, 3.07 (1984) [hereinafter *Letters of Credit*]; 2 *White and Summers on the UCC* § 19–2, at 8. Moreover, it is often the existence of a dispute over the underlying transaction that prompts the beneficiary to draw on a standby letter of credit, because "[t]he letter of credit is an instrument designed to enable the beneficiary to collect money to which it believes itself entitled and to hold such sums while any disputes are pending." *Andy Marine, Inc. v. Zidell, Inc.*, 812 F.2d 534, 537 (9th Cir. 1987); *see also Federal Deposit Ins. Corp. v. Liberty Nat'l Bank & Trust Co.*, 806 F.2d 961, 968 (10th Cir.1986); *Arbest*, 777 F.2d at 585. Therefore, that there was uncertainty or a dispute as to whether Ward was actually entitled to the amounts held in suspense is irrelevant to First's obligation under the letter of credit. "When proper documents are presented, the issuer must honor the draft, even though the underlying contract has been breached." Okla.Stat.Ann. tit. 12A, § 5–114 Okla. comment 1. First must take Ward's certification that it was entitled to the amounts held in suspense at face value.

See Liberty Nat'l, 806 F.2d at 969; *Letters of Credit* ¶ 1.07[2].

■ Defendants also argue that ORC had an obligation to distribute proceeds to the various interest owners in the wells Ward operated, and the invoice reference to suspense accounts was evidence that Ward was attempting to collect amounts to which only the interest owners were entitled. Ward replies that it acted as agent for the interest owners in acquiring the letter of credit to assure payment in the event ORC defaulted in its obligation to distribute proceeds, and that its demand on behalf of the interest holders is standard practice. In considering its duty to pay under the demand on the credit, First must ignore these arguments, as must we, because they concern the underlying transaction, not the face of the documents; thus they violate the independence principle. Issuers cannot look to the underlying transaction to supplement or interpret the terms of the letter of credit. *See Andy Marine*, 812 F.2d at 537; *Pringle–Associated Mortgage Corp. v. Southern Nat'l Bank*, 571 F.2d 871, 874 (5th Cir.1978). Moreover, issuers need not be familiar with trade practices or usage in order to resolve such disputes. *See Marino Indus. Corp. v. Chase Manhattan Bank*, 686 F.2d 112, 115 (2d Cir.1982); Okla Stat.Ann. tit. 12A, § 5–109(1)(c).

■ The corollary to the beneficiary's right to payment only upon strict compliance with the terms of the letter of credit is that the letter of credit must explicitly set forth all preconditions for payment. *Marino Indus.*, 686 F.2d at 115. "The duties of a bank under a letter of credit are created by the document itself, the bank being deprived of any discretion not granted therein." *Dulien Steel Prods., Inc. v. Bankers Trust Co.*, 298 F.2d 836, 840 (2d Cir.1962). In the case at bar, the letter of credit did not speak to whether Ward could draw for amounts held in suspense; therefore, First must presume that it could. *Cf. East Girard Sav. Ass'n v. Citizens Nat'l Bank & Trust Co.*, 593 F.2d 598, 602–03 (5th Cir.1979) (parties have option of making actual default on underlying contract an express term of credit); Okla.Stat.Ann. tit. 12A, § 5–109(1) (same).

■ The district court also accepted the defendants' argument that the course of dealing or course of performance between Ward and First regarding amounts held in suspense indicated that First was justified in dishonoring Ward's draft. But we will not allow an issuer to look to a course of dealing or performance to justify dishonor of a facially conforming demand. To do so would inject a complex litigable issue into every wrongful dishonor case. Although the letter of credit is often loosely referred to as a contract between the issuer and the beneficiary, "the relationship between the issuer and the beneficiary is statutory, not contractual." *Arbest*, 777 F.2d at 583.

> "Letters of credit evolved as a mercantile specialty entirely separate from common law contract concepts and they must still be viewed as entities unto themselves....
>
> ... [A]ttempts to avoid payment premised on extrinsic considerations—contrary to the instruments' formal documentary nature—tend to compromise their chief virtue of predictable reliability as a payment mechanism."

*Voest–Alpine Int'l Corp. v. Chase Manhattan Bank*, 707 F.2d 680, 682 (2d Cir.1983). When a letter of credit is unambiguous on its face, courts should resolve questions of wrongful honor and dishonor as a matter of law, without resort to factual inquiries such as course of dealing or performance. *See Delta Brands, Inc. v. MBank Dallas, N.A.*, 719 S.W.2d 355, 360 (Tex.Ct.App.1986); 2 *White and Summers on the UCC* § 19–5, at 39 n. 60; *cf.* Okla. Stat.Ann. tit. 12A, § 2–208(2) (express terms of agreement should be construed as consistent with course of dealing and performance, if possible; if not, express terms control).

## II

■ The FDIC argues that First was entitled to dishonor Ward's draft because the certification that the amounts held in suspense were past due to Ward was

fraudulent. There is an exception to the independence principle for cases of fraud. *See* Okla.Stat.Ann. tit. 12A, § 5–114(2); 2 *White and Summers on the UCC* § 19–7, at 59. But this exception must be narrowly construed or it will swallow up the rule. *Roman Ceramics Corp. v. Peoples Nat'l Bank*, 714 F.2d 1207, 1212 (3d Cir.1983). Consequently, Ward's certification was fraudulent only if its claim to the funds held in suspense was not even colorable or had absolutely no basis in fact. *See Andy Marine*, 812 F.2d at 538; *Itek Corp. v. First Nat'l Bank*, 730 F.2d 19, 25 (1st Cir.1984); *Roman Ceramics*, 714 F.2d at 1214.

 Whether Ward had a good faith claim to the funds held in suspense appears to present a factual question which cannot be resolved on summary judgment. *See Banque Paribas v. Hamilton Indus. Int'l, Inc.*, 767 F.2d 380, 385 (7th Cir.1985); *Voest–Alpine*, 707 F.2d at 686. Also, a problem exists here in that in a suit for wrongful dishonor, fraud is an affirmative defense which the issuer must plead and prove, *Roman Ceramics*, 714 F.2d at 1214; *see* Okla.Stat.Ann. tit. 12, § 2008(C)(9); Fed.R.Civ.P. 8(c), and neither the FDIC nor Continental raised fraud as a defense in their answers. The record does not reveal whether the parties otherwise addressed this defense before the district court. Nonetheless, on remand the district court may allow defendants to amend their pleadings if "justice so requires." Fed.R.Civ.P. 15(a); *see City of Columbia v. Paul N. Howard Co.*, 707 F.2d 338, 341 (8th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983); 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1489, at 698–99 (2d ed. 1990).

REVERSED AND REMANDED.