**WESTERN SURETY CO., a Texas Corporation, Plaintiff–Appellee,**

v.

**BANK OF SOUTHERN OREGON, an Oregon state chartered bank, Defendant–Appellant.**

No. 99–35844.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2001

Filed July 12, 2001

William V. Deatherage, Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C., Medford, Oregon, for the defendant-appellant.

Jan D. Sokol and James Clark Prichard, Stewart, Sokol & Gray LLC, Portland, Oregon, for the plaintiff-appellee.

Before: GOODWIN, GREENBERG,* and RAWLINSON, Circuit Judges.

GREENBERG, Circuit Judge:

The Bank of Southern Oregon (the "Bank") appeals from a portion of the district court's summary judgment against it and in favor of Western Surety Company ("Western") on Western's claim that the Bank failed to honor its drafts under letters of credit. The Bank claims there was a genuine issue of material fact on its defense that Western fraudulently sought payment on one letter. Exercising plena-

---

* The Honorable Morton I. Greenberg, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

ry review, *see Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994), we affirm the district court's grant of summary judgment in favor of Western because the Bank did not proffer any evidence establishing the elements of fraud to create a genuine issue of material fact on that issue.[1]

The facts are not complex. Western posted performance bonds on behalf of Black Oak Construction Company ("Black Oak") in connection with work Black Oak was performing for a school district in the State of Washington. Western also issued performance bonds in connection with work Black Oak was performing in Bend, Oregon. As a condition of issuance of the bonds, the Bank issued two Clean Irrevocable Letters of Credit in favor of Western to serve as security for losses Western might incur in the event of a default by Black Oak. The language in the letters of credit was essentially identical, although the letters had different issuing numbers, issuing dates, expiration dates and aggregate amounts. Letter of Credit No. 192 ("No.192"), issued on June 19, 1997, for an aggregate amount not to exceed $100,000, expired on June 18, 1998, but could be extended automatically for additional one-year terms. Letter of Credit No. 195 ("No.195"), issued on August 8, 1997, for an aggregate amount not to exceed $150,000, expired on August 7, 1998, and included the same automatic extension provision as that in Letter of Credit No. 192. Otherwise, the relevant parts of the letters of credit provided:

> We warrant to you that your drafts under this CLEAN IRREVOCABLE LETTER OF CREDIT WILL BE DULY HONORED UPON PRESEN-

TATION OF YOUR DRAFT(S) drawn on us at 1455 E. McAndrews Road, Medford, Oregon, on or before the expiration date or on or before any automatically extended date as set forth below. Our obligation under this Letter of Credit is the individual obligation of the Bank, in no way contingent upon reimbursement with respect thereto, or upon our ability to perfect any lien or security interest.

.    .    .    .    .

> THIS LETTER OR [sic] CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (1993 REVISION) INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION NO. 500.

Significantly, indeed critically, the letters neither refer to nor by their terms relate to a particular project.

Black Oak defaulted on its project in Washington, causing Western to undertake completion of the project and to make payment on the performance bonds. Therefore, on August 10, 1998, Western executed and delivered to the Bank two drafts under the two letters of credit. The Bank refused to honor the drafts, alleging that Letter No. 192 was issued for the Bend, Oregon, project which was not in default. Western sued the bank for failure to honor the drafts, and subsequently moved for and obtained a summary judgment establishing the Bank's liability on both letters.[2] The Bank partially appeals from the district court's entry of summary judgment, as it contends that there was a genuine issue of material fact regarding a fraud defense it raised as to Western's

---

1. The district court had diversity of citizenship jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

2. Western asserted a claim against the Bank of breach of its duty to act fairly and in good faith. The district court dismissed the claim and, as Western does not appeal from the dismissal, we are not concerned with it.

claim on Letter No. 192. The Bank, however, does not challenge the judgment on Letter No. 195.

■■■ Letters of credit are governed by Oregon state law and, by their terms in this case, the Uniform Customs and Practice for Documentary Credits ("UCP"). The UCP defines a letter of credit as:

[A]ny arrangement, however named or described, whereby a bank ("Issuing Bank") acting at the request and on the instructions of a customer (the "Applicant") or on its own behalf,

    i.  is to make a payment to or to the order of a third party (the "Beneficiary"), or is to accept and pay bills of exchange (Draft(s)) drawn by the Beneficiary ... against stipulated document(s), provided that the terms and conditions of the Credit are complied with.

UCP Art. 2. Under Oregon letter of credit law, there is an "independence principle" out of which the parties may not contract. *See* Ore.Rev.Stat. § 75.1030(3). One section out of which the parties may not contract provides that:

Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

*Id.* § 75.1030(4). Therefore, in determining an issuer's liability for refusal to honor a letter of credit, generally the court must look only to the terms of the letter without regard to those in the underlying transaction. *See Andy Marine, Inc. v. Zidell*

*Inc.*, 812 F.2d 534, 537 (9th Cir.1987) ("We cannot turn to an underlying agreement in order to interpret a letter of credit unless references to the underlying agreement in the letter of credit explicitly create a condition for honoring a draft."). Courts have recognized an exception to this principle, however, where there is a claim of fraud, in which event it is appropriate for the court to look beyond the terms of the letter of credit. *See id.* at 538.[3]

■■■ Under Oregon law, an issuing bank, acting in good faith, may dishonor a draft on a letter of credit if the presentation of the draft would facilitate a commission of a material fraud by the beneficiary. *See* Or.Rev.Stat. § 75.1090. To withstand summary judgment by establishing a claim for fraud, the Bank had to show that there was a genuine issue of material fact as to the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *See Overbay v. Ledridge*, 97 Or.App. 292, 776 P.2d 29, 30 (1989); *Webb v. Clark*, 274 Or. 387, 546 P.2d 1078, 1080 (1976).

■■■ The Bank has not met its burden. First, there is no evidence of a representation by Western. Indeed, the only evidence of record is that Western merely presented the Bank with the drafts required by the letters. Further, assuming *arguendo* that Western's drafts acted as some sort of representation, there is no evidence that it was false. The letters of credit are identical on their face, except for

---

3. We also point out that even if the parties could have contracted out of Or.Rev.Stat. § 75.1030(4), they did not attempt to do so.

the number, date, expiration date and aggregate amount, and there is no indication anywhere on them that they were for specific construction projects.

Nevertheless, the Bank argues that a handwritten notation on a letter from Donald Stathos ("Stathos") of Mission Insurance to the Bank's president and an affidavit from Noel Parson ("Parson"), the Bank loan officer who approved both letters of credit, create a genuine issue of material fact. As to the former piece of evidence, the letter from Stathos first acknowledges the question of whether the letters of credit apply to specific jobs, and then states that "[t]here was no discussion on whether the letter of credit was for a specific job or for any jobs the bonding company bonded. The letter of credit did not specify that the letter of credit was limited to a specific job." The handwritten notation on Stathos's letter recites that "Lisa Hendricks stated that she understood the letters to be specific. She stated she will verify this if possible."[4] The Bank claims that Western's agent made the notation and that Western acknowledges the two letters of credit were for separate projects.

There is no indication, however, by whom the notation was made, nor does the Bank proffer any authenticating evidence. Indeed, Western contends it was unaware of the letter until the Bank produced it in response to Western's discovery requests. Further, the notation merely states that one individual understood the letters to be project specific but that the information needed to be verified. This piece of evidence is insufficient to create a genuine issue of material fact.

Similarly, the Bank's affidavit from Parson is insufficient to create a material dispute of fact. The affidavit merely states in conclusory fashion that it was his understanding that each letter of credit was for a specific job. Furthermore, Stathos's letter to the Bank's president directly contradicted Parson's claim. In any event, as the Bank offers no factual evidence to support the allegation of fraud, the affidavit is insufficient to defeat summary judgment. *See Hansen v. United States,* 7 F.3d 137, 138 (9th Cir.1993) (per curiam).[5]

Inasmuch as the evidence offered by the Bank, even if accepted as true, does not support a conclusion that Western engaged in fraud in presenting the draft on Letter No. 192, there is no dispute of material fact on the issue. Consequently, the district court properly granted summary judgment to Western.

AFFIRMED.

---

4. We believe that Lisa Hendricks was employed in Stathos's office.

5. We note that the Bank in its briefs takes the position that Western in making its request for payment on Letter No. 192 may have been guilty of the criminal act of theft by deception

in violation of Or.Rev.Stat. § 164.085(1)(a). We regard this argument as completely unjustified as Western merely presented documents to the Bank and sought payment on them. If the Bank thought that it was not liable it was free to dispute Western's claim, which it did.