In re AGF Direct Gas Sales          CV-01-368-M    04/30/02
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE

In re:
AGF Direct Gas Sales &
Servicing, Inc., a/k/a
AGF Direct Energy, LLC,
      Debtor

_____


Bank of New Hampshire,
      Appellant

      v.                                 Civil No. 01-368-M
                                         Opinion No. 2002 DNH 086
AGF Direct Gas Sales &
Servicing, Inc., a/k/a
AGF Direct Energy, LLC and
Baltimore Gas & Electric Co.,
      Appellees


                           O R D E R


      Appellee AGF Direct Gas Sales and Servicing, Inc. ("AGF") is

a Chapter 7 debtor.  Bank of New Hampshire ("the Bank") appeals a

May 29, 2001, order of the bankruptcy court (Vaughn, C.J.)

granting the Chapter 7 Trustee's motion to approve a stipulation

to settle a claim with Baltimore Gas & Electric Co. ("BG&E), a

creditor of AGF.  For the reasons given below, the order of the

bankruptcy court is affirmed.

## Standard of Review

A bankruptcy court's findings of fact are not set aside unless clearly erroneous. Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997) (citing FED. R. BANKR. P. 8013; Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 137 (1st Cir. 1992); FED. R. CIV. P. 52(c), advisory committee's note to 1991 Amendment). However, a "bankruptcy court's legal conclusions, drawn from the facts so found, are reviewed de novo." Palmacci, 121 F.3d at 785 (citing Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 497 (1st Cir. 1997)).

> Absent either a mistake of law or an abuse of discretion, the bankruptcy court ruling must stand. See Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998). A bankruptcy court "may abuse its discretion by ignoring a material factor that deserves significant weight, relying on an improper factor, or, even if it [considered] only the proper mix of factors, by making a serious mistake in judgment." Id.

Picciotto v. Salem Suede, Inc. (In re Salem Suede, Inc.), 268 F.3d 42, 44 (1st Cir. 2001). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013.

## Factual Background

Before being forced into Chapter 7 bankruptcy, AGF was in the business of buying and selling natural gas. In the course of its business, AGF entered into an agreement with BG&E under which AGF used BG&E's infrastructure to provide gas to its customers and used BG&E's billing services to collect amounts due from its customers. To satisfy BG&E's concerns over AGF's ability to meet its financial obligations, AGF arranged to have the Bank issue a series of letters of credit. By the time AGF was forced into bankruptcy, BG&E was the beneficiary of a $100,000 letter of credit issued by the Bank. That letter of credit was fully secured by two certificates of deposit owned by AGF. The Bank also issued several other letters of credit on AGF's behalf, some of which were not fully secured.

The Chapter 7 petition in this case was filed on September 12, 2000. As of that date, AGF owed BG&E $90,062.93 for use of its infrastructure and billing services, while BG&E owed AGF $98,483.66 that BG&E had collected from AGF's customers. Rather than setting off the amount AGF owed it from the amount it owed AGF, and then paying the Trustee the difference ($8,420.73),

3

BG&E, pursuant to an agreement with the Trustee, elected to draw against the letter of credit, and received payment from the Bank on April 2, 2001. On April 3, 2001, the Bank moved for relief from the automatic stay in order to take possession of the certificates of deposit securing the letter of credit, to the extent the letter was drawn on. That relief was granted by order of the bankruptcy court dated May 3, 2002. After drawing on the letter of credit, BG&E paid the Trustee $98,483.66, to be held in escrow, pending the bankruptcy court's approval of its settlement with the Trustee. The agreement between BG&E and the Trustee also called for mutual waiver and release of all claims by both parties.

In its order of May 29, 2001, the bankruptcy court, over the Bank's objections, approved BG&E's settlement with the Trustee and ruled, inter alia, that under the interpretation of 11 U.S.C. § 509 adopted by the majority of the courts that have construed that statute, the issuer of a letter of credit is not a co-debtor and, as a consequence, is not subrogated to a creditor's rights against a debtor. At the same time the bankruptcy court approved the settlement between BG&E and the Trustee, it approved another

4

compromise under which the Trustee and one of AGF's secured creditors, Adams Resources Marketing, Limited ("Adams"), agreed to split AGF's accounts receivable, including the $98,483.66 that BG&E had collected from AGF's customers but had not yet paid over to AGF. This appeal followed.

## Discussion

In essence, the Bank contends that once BG&E drew on the letter of credit, the Bank became subrogated to BG&E's right of set-off, and should have been allowed to collect the $90,062.93 that AGF owed the Bank (by virtue of the Bank's having paid BG&E) from the $98,483.66 that BG&E owed AGF, rather than having to draw against the certificates of deposit, owned by AGF, that secured the letter of credit. The Bank's goal, obviously, is to keep from depleting the pool of assets potentially available to back up other undersecured letters of credit issued by the Bank on AGF's behalf. The Bank argues that the bankruptcy court erred in approving the stipulated settlement between BG&E and the Trustee by: (1) failing to recognize and enforce its common-law right of subrogation; (2) denying its statutory right of subrogation by misconstruing the "liable with" language of 11

5

U.S.C. § 509(a); and (3) failing to deem the stipulation between AGF and BG&E to be ultra vires.

The Trustee counters that: (1) the Bank's appeal is moot, given its failure to seek a stay pending appeal; (2) the Bank's exclusive source for subrogation rights is § 509(a), under which, as the issuer of a letter of credit, it does not qualify as a co-debtor entitled to subrogation rights; (3) even if the Bank has subrogation rights in addition to those available under § 509(a), the doctrine of equitable subrogation does not apply to the facts of this case; and (4) even if the Bank has common-law subrogation rights, those rights do not include a right of set-off, because the Bank has not shown that it qualifies for set-off under the bankruptcy code.

For its part, BG&E contends that: (1) the Bank's appeal should be dismissed because the Trustee has offered to preserve all of the Bank's claims against the money collected by BG&E on AGF's behalf pending an appropriate adversary proceeding; (2) the bankruptcy court did not abuse its discretion in approving the stipulated settlement between BG&E and the Trustee; (3) even if

6

the Bank were subrogated to BG&E's rights, those rights do not include a right of set-off; (4) even if BG&E did, in the abstract, have a right of set-off to which the Bank was subrogated, the debts in this case are not subject to set-off because they were not mutual; (5) $92,506.71 of the $98,483.66 held by BG&E on AGF's behalf was collected less than 90 days pre-petition, making that amount ineligible for set-off under 11 U.S.C. § 553(a)(3); (6) the decision whether to allow set-off is discretionary, and the bankruptcy court did not abuse its discretion; (7) the Bank is not entitled to subrogation rights under § 509(a) because it is not an entity "liable with" the debtor; (8) the decision whether to grant equitable relief, including equitable subrogation, is discretionary, and the bankruptcy court did not abuse its discretion; and (9) the Bank's claim of ultra vires activity and its assertion of a "marshaling" theory were not properly before the bankruptcy court.

Without addressing all of the issues raised by the parties, and without necessarily adopting all of the arguments advanced by BG&E and the Trustee, the court affirms the order of the bankruptcy court.

The subrogation provision in the bankruptcy code states, in pertinent part:

> Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509(a). In CCF, Inc. v. First Nat'l Bank & Trust Co. (In re Slamans), 69 F.3d 468 (10th Cir. 1995), a case on which the bankruptcy court relied, the court of appeals noted that "[s]ection 509(a) of the [bankruptcy] Code governs subrogation in bankruptcy proceedings," id. at 473. Based upon a definition of letters of credit drawn from Oklahoma law, which incorporates the Uniform Commercial Code, the court of appeals acknowledged that "the bankruptcy courts disagree whether an issuer of a letter of credit is eligible for § 509 subrogation," id. at 475 (footnote omitted); see also 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY § 509.09[3] (15th rev. ed. 2001) ("Since subrogation is an equitable remedy dependent on the facts of each case, it is not surprising that courts grappling with subrogation cases may appear to reach divergent results.") The court then sided with those courts that have ruled that the issuer of a letter of

8

credit is not eligible for § 509 subrogation because such an entity is not "liable with" the debtor, but is independently liable, id. at 476. In so ruling, the court of appeals explained that "determination that an issuer of a letter of credit is liable with the account party [here, AGF] on the beneficiary's claim against the account party on the underlying transaction subverts the fundamental essence of letter of credit law." Id. (citing Centrifugal Casting Mach. Co. v. American Bank & Trust Co., 966 F.2d 1348, 1352 (10th Cir. 1992)). That fundamental essence is "the independence principle, which is the cornerstone of the commercial vitality of letters of credit." In re Slamans, 69 F.3d at 476 (quoting Ward Petroleum Corp. v. Federal Deposit Ins. Corp., 903 F.2d 1297, 1299 (10th Cir. 1990)).

The bankruptcy court committed no error of law in relying upon In re Slamans for the proposition that the issuer of a letter of credit is not entitled to subrogation rights under § 509.[1] Accordingly, to the extent that the bankruptcy court so

---

[1] The court further notes that while the Bank has identified several cases in which the issuer of a letter of credit has been subrogated to the rights of a creditor against a debtor, it has identified no case in which the issuer has been subrogated to a creditor's right of set-off. Rather, issuers have been subrogated to: (1) a creditor's general right to make a claim

9

ruled, the order of that court is affirmed.  What remains to be determined, however, is whether the Bank has a subrogation right independent of that conferred by § 509.

According to the Bank, the bankruptcy court erroneously decided, albeit implicitly, that § 509 preempts the field of subrogation in bankruptcy.  (Appellant's Br. at 6.)  The Bank goes on to argue that in addition to whatever rights it may or may not have under § 509(a), it has a right under the doctrine of equitable subrogation, and that under the principles of equitable subrogation, it is entitled to exercise BG&E's right of set-off.

---

against a bankruptcy estate, see, e.g., In re Minnesota Kicks, Inc., 48 B.R. 93 (Bankr. D. Minn. 1985); (2) a creditor's right to a security interest in specific collateral, see, e.g., In re Valley Vue Joint Venture, 123 B.R. 199 (Bankr. E.D. Va. 1991); (3) a creditor's right to status as a secured rather than unsecured creditor, see, e.g., In re Sensor Sys., Inc., 79 B.R. 623 (Bankr. E.D. Pa. 1987); and (4) a creditor's right to an administrative expense priority claim, see, e.g., In re Nat'l Serv. Lines, Inc., 80 B.R. 144 (Bankr. E.D. Mo. 1987).  Here, however, by virtue of being fully secured on its letter of credit, and of having the bankruptcy court's leave to obtain full repayment from AGF's certificates of deposit, the Bank already has in its hands a more complete remedy than was awarded to any of the issuers in the cases in which courts have granted issuers a right of subrogation.

As a preliminary matter, the court is not at all certain that the bankruptcy court's order should be read as ruling that § 509(a) preempts the field, nor is it apparent that such a ruling would constitute legal error.  See In re Slamans, 69 F.3d at 473 ("[s]ection 509(a) of the [bankruptcy] Code governs subrogation in bankruptcy proceedings").  Furthermore, it is not at all clear that equitable subrogation would provide any greater rights than those available under § 509(a).

On the one hand, the Bank cites cases that stand for the proposition that "equitable subrogation is separate and distinct from the subrogation rights afforded by section 509, and that section 509 is an additional, but not exclusive remedy in bankruptcy," In re Spirtos, 103 B.R. 240, 245 (Bankr. C.D. Cal. 1989).  More recently, however, the tenth circuit has explained that "[t]here is a split of authority whether subrogation in bankruptcy court is governed exclusively by § 509, or whether the entity seeking subrogation under § 509 must also satisfy the five-part equitable subrogation test."  In re Slamans, 69 F.3d at 472 n.2 (citing Photo Mech. Servs., Inc. v. E.I. Dupont De Nemours & Co. (In re Photo Mech. Servs., Inc.), 179 B.R. 604,

11

618-19 (Bankr. D. Minn. 1995)).  As for the elements of equitable subrogation:

> Equitable subrogation is generally appropriate where: (1) payment was made to protect the subrogee's own interest; (2) repayment by the subrogee was not voluntary; (3) the debt paid was one for which the subrogee was not primarily liable; (4) the entire debt was paid; and (5) subrogation will not injure the rights of others.

In re The Medicine Shoppe, 210 B.R. 310, 314 (Bankr. N.D. Ill. 1997) (citations omitted).  Rather than understanding equitable subrogation to expand the remedies available to a party in the Bank's position, contemporary jurisprudence appears to regard equitable subrogation, when applicable, as a limitation on the remedies that might otherwise be available under § 509.  See, e.g., In re The Medicine Shoppe, 210 B.R. at 312 ("other circuits have split as to whether a co-debtor seeking subrogation under § 509(a) must also satisfy the more stringent five-part equitable subrogation test") (emphasis added, citations omitted).

Given the elements of equitable subrogation, the bankruptcy court had no need to rule that § 509(a) preempts the field in order to decide that the Bank has no subrogation right.  Rather,

12

by adopting the reasoning of In re Slamans, the bankruptcy court necessarily decided that the Bank was not "liable with" AGF on BG&E's claim against AGF. Because that decision was based upon the independence principal, In re Slamans, 69 F.3d at 476 (citation omitted), the bankruptcy court's ruling on § 509(a) subrogation must be understood as a decision that the Bank's payment to BG&E was not payment of a debt owed by AGF for which the Bank was secondarily liable, but was payment of a debt, established by the terms of the letter of credit, for which the Bank was independently and primarily liable. On that basis, the Bank cannot meet the third prong of the equitable subrogation test. Furthermore, in light of the half interest in AGF's receivables that was granted to secured creditor Adams, it seems unavoidable that subrogation would injure the rights of Adams, which also prevents the Bank from meeting the fifth prong of the equitable subrogation test.

In summary, the bankruptcy court committed no legal error by adopting the reasoning of the tenth circuit, as expressed in In re Slamans. Under the rule of that case, the Bank is not entitled to subrogation rights under either § 509(a) or the

principles of equitable subrogation.  Accordingly, the order of the bankruptcy court is affirmed.

Having so ruled, the court concludes with the following observations on the equities of this case.  On the facts before it, the court can discern no overriding equitable principle that would require – or even support – a contrary result.  When it entered into its agreement with AGF to issue a letter of credit on AGF's behalf, the Bank was free to negotiate whatever terms it wished.  It chose to protect itself by taking a security interest in certificates of deposit owned by AGF.  It could just as easily have negotiated for an interest in AGF's accounts receivable, or, more specifically, an interest in the funds collected for AGF by BG&E.  It did not do so, and the court declines "to rewrite the contract between the parties to afford [the Bank] greater protection than that for which it bargained.  [The Bank] is in the business of selling letters of credit; it could factor in the risk of this situation."  <u>Berliner Handels-Und Frankfurter Bank v. East Texas Steel Facilities, Inc.</u> (<u>In re East Texas Steel Facilities, Inc.</u>, 117 B.R. 235, 243 (Bankr. N.D. Texas 1990)

(declining to allow issuer of letter of credit to be subrogated to creditor's right to reclamation).

Obviously, the Bank faces a risk created by its failure to adequately secure one or more other letters of credit issued on AGF's behalf. But the risk created by the Bank's failure to protect itself does not transform this situation into one in which subrogation is necessary "to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it." In re Valley Vue Joint Venture, 123 B.R. at 209 (quoting Moritz v. Redd, 145 S.E. 245, 248 (Va. 1928). With respect to the obligations of the parties in this case, the party who in good conscience ought to discharge the debt to BG&E, namely AGF, will do so, by virtue of BG&E's claim on the letter of credit. The Bank is not disadvantaged, because it, in turn, has full recourse to AGF's certificates of deposit. Thus, declining to apply the doctrine of equitable subrogation hardly results in AGF's avoidance of its obligation to the Bank. See In re Valley Vue Joint Venture, 123 B.R. at 208) (quoting Federal Land Bank v. Joynes, 18 S.E.2d 917, 920 (Va. 1942) ("The rationale of subrogation is 'bottomed on sensitivity to the

15

comparative equities involved.  Where one is more fundamentally liable for a debt which another is obligated to pay, such person shall not enrich himself by escaping his obligation.'").

The particular inequity for which equitable subrogation is the solution is not present in this case, and the Bank has given the court no reason to conclude that the doctrine of equitable subrogation has ever been used to provide relief from the collateral predicament in which the Bank finds itself.  That is, there is nothing in the jurisprudence of equitable subrogation to suggest that the doctrine is intended to be used as the Bank seeks to use it, to rectify its failure to fully protect itself on collateral letters of credit issued to parties other than BG&E by making a claim on AGF assets held, or once held, by BG&E, to which other parties have legitimate claims.  In other words, under the stipulation entered into by the Trustee and BG&E, AGF will pay its debt to BG&E; equity does not require parties such as secured creditor Adams to bear any of the burden created by the Bank's decision to issue undersecured letters of credit on behalf of AGF.

The order of the bankruptcy court is affirmed.


**SO ORDERED.**


                                _____
                                Steven J. McAuliffe
                                United States District Judge

April 30, 2002

cc:   Lucy J. Karl, Esq.
      Carol L. Hoshall, Esq.
      Frank P. Spinella, Jr., Esq.
      Deborah A. Notinger, Esq.
      Geraldine L. Karonis, U.S. Trustee
      George Vannah, U.S. Bankruptcy Court